UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROBERT MORAN,
    *Plaintiff*,

v.

TOWN OF GREENWICH, et al.,
    *Defendants*.

No. 3:19-cv-00722 (VAB)

**RULING AND ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS AND TO DISMISS DEFENDANT SEAN P. O'DONNELL IN HIS INDIVIDUAL CAPACITY**

Robert Moran ("Plaintiff") has sued the Town of Greenwich, Connecticut (the "Town" or "Greenwich"), and Peter Tesei, James Heavey, Andrew Greco, Sean P. O'Donnell, Brian N. Tornga, Hayes Sgaglio, Albert Escoffery, Danielle Petruso and John Does 1-4 (the "Individual Defendants," and, together with the "Town," the "Defendants"), various Town law enforcement officers, for deprivation of Mr. Moran's rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, excessive force, unlawful search, and malicious prosecution and abuse of process, all under 42 U.S.C. § 1983; municipal liability; conspiracy to violate his civil rights; assault and battery; negligent infliction of emotional distress; intentional infliction of emotional distress; negligence; and gross negligence and recklessness. Am. Compl., ECF No. 24 (Nov. 15, 2019).

Mr. Moran moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure as to all claims except for the unlawful search claim and to dismiss the claims against Sean P. O'Donnell in his individual capacity under Rule 41(a)(2) of the Federal Rules of Civil Procedure. Mot. for J. on the Pleadings Pursuant to F.R.C.P. 12(c) and to Dismiss Against

Sean P. O'Donnell in His Individual Capacity Pursuant to 41(a)(2), ECF No. 54 (Sept. 11, 2020) ("Pl.'s Mot.").

After receiving consent from Mr. O'Donnell to dismiss claims against him, provided those claims were dismissed with prejudice, *see* Notice of Consent to Pl.'s Mot. to Dismiss (Doc. 54) by Def. Sean P. O'Donnell Provided Dismissal Is W[i]th Prejudice, ECF No. 55 (Sept. 11, 2020) ("O'Donnell Reply"), Mr. Moran withdrew his consent to dismiss the claims against Mr. O'Donnell in his individual capacity. Notice Withdrawing Consent to Dismiss Against Sean P. O'Donnell and that Portion of Mot. Doc. #54 Requesting Dismissal of All Claims in His Individual Capacity Pursuant to 41(a)(2) and Reply Affirmation, ECF No. 68 (Nov. 20, 2020) ("Pl.'s Reply").

For the foregoing reasons, Mr. Moran's motion for judgment on the pleadings will be **DENIED**, and his motion to dismiss claims against Mr. O'Donnell in his individual capacity will be **DENIED as moot** in light of his notice of withdrawal.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Allegations

#### 1.     The Parties

Mr. Moran allegedly is a resident of New York. Am. Compl. ¶ 7.

The Town of Greenwich allegedly maintains the Greenwich Police Department, which allegedly is "authorized to perform all functions of a police department" under the authority of Connecticut Law. *Id.* ¶ 9.

"At all times" relevant to the allegations set forth in the Amended Complaint, the Defendants, namely Peter Tesei, allegedly the Greenwich Police Commissioner/First Selectman, James Heavey, allegedly the Greenwich Chief of Police, Sean P. O'Donnell and Danielle

Petruso, allegedly Greenwich police sergeants, and Andrew Greco, Albert Escoffery, Brian N. Tornga, and Hayes Sgaglio, allegedly Greenwich police officers, "were duly sworn . . . officers" of the Town "and were acting under the supervision of said department and according to their official duties." *Id.* ¶ 10.

"At all times" relevant to the allegations set forth in the Complaint, the Defendants, "either personally or through their employees, were acting under the color of state law"; were acting "within their scope of their employment by the [Town]"; and were acting "jointly and in concert with each other." *Id.* ¶¶ 11–14.

### 2. The May 14, 2017 Incident

Mr. Moran alleges that "[o]n May 14, 2017 at approximately [] p.m.," he "was in front of 11 Orchard St. Cos Cob in the Town of Greenwich," where he allegedly "was met by several Greenwich Police Officers." *Id.* ¶ 23. He allegedly "was ordered to stand up and sit back down numerous times." *Id.*

"The Individual Defendants [allegedly] identified themselves as police officers and were wearing and/or displaying uniforms and badging that identified them as such." *Id.* ¶ 24.

Mr. Moran allegedly "requested to be placed in handcuffs and taken to the hospital multiple times" and allegedly "alerted the defendants that he needed psychotropic medication for his mental illness." *Id.* ¶ 25. He allegedly made the request "to be handcuffed . . . and to be taken to the hospital on more than one occasion." *Id.* ¶ 27. "[His] tone [allegedly] was not civil" in making these requests. *Id.*

Sergeant O'Donnell and Officer Greco allegedly "refuse[d] to place Mr. Moran in handcuffs and put him in the patrol car so that he could receive medical treatment," and allegedly "indicated to Mr. Moran that they were police officers and that he should be quiet." *Id.* ¶ 28.

3

They allegedly "made it clear to [Mr. Moran] that he would do what they said and that they would not do what he wanted, i.e., handcuff him and take him into custody so that he could get medical care." *Id.* They allegedly "yell[ed] at Mr. Moran." *Id.*

Allegedly "[a]fter a substantial period of time sitting on the ground while in need of medical attention," Sergeant O'Donnell allegedly told Mr. Moran "to lay on his stomach." *Id.* ¶ 29. Mr. Moran allegedly "protested that he was not in the military, that he is a civilian." *Id.* The officers allegedly "did not use any de-escalation techniques." *Id.*

Sergeant O'Donnell allegedly "struck [Mr. Moran] in the head with a metal baton." *Id.* ¶ 30. Mr. Moran allegedly "was struck in the head more than ten times with fists." *Id.* ¶ 31.

Mr. Moran's neighbor allegedly "videotaped what transpired when the parties were on the ground," which allegedly began "after the head strikes occurred."[1] *Id.* ¶ 71.

At 0:14 of the video, Officer Greco allegedly states, "Can we get a Kimura?"[2] *Id.* ¶ 33.

---

[1] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citations omitted). With respect to video evidence, courts in this Circuit have considered whether the video evidence was "integral to the . . . Complaint," meaning that the plaintiff "drafted her pleading using the specific videos . . . as source material," in determining whether video evidence can be considered at the motion to dismiss stage. *See, e.g.*, *Holmes v. City of N.Y.*, No. 14 CV 5253-LTS, 2016 WL 915332, at *2-3 (S.D.N.Y. Mar. 4, 2016); *see also Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) ("[O]n a motion to dismiss, the court is entitled to consider any exhibits attached to the complaint, including video evidence."). Because the video Mr. Moran requests that the Court consider is repeatedly referenced throughout Mr. Moran's Amended Complaint, *see* Am. Compl., ¶¶ 32-69, and is linked in the body of the Amended Complaint, *id.* ¶ 71, as well as because neither the Town nor any individual Defendants object to the Court's consideration of the video in adjudicating this motion, the Court deems the video to be incorporated into the Amended Complaint.

[2] The Court has viewed the video alongside Mr. Moran's Amended Complaint, which contains allegations of what happens minute-by-minute in the video. *See* Am. Compl. ¶¶ 32-69. The video, however, does not appear to specifically identify Mr. Moran or any of the individual Defendants by name and, at times, the audio and visual quality of the video has prevented the Court from confirming the accuracy of Mr. Moran's recitation of the events in the video. *See* Am. Compl. ¶ 71 (citing the videotape allegedly of the May 24, 2017 incident between Mr. Moran and various individual Defendants, linked at https://www.youtube.com/watch?v=ZLtVNoENFMQ (last visited July 30, 2021)). Accordingly, the Court will take the allegations in the light most favorable to the Plaintiff, as none of Mr. Moran's allegations as to the video are "utterly discredited" by video evidence. *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 380-81 (dismissing on summary judgment when the complaint's facts were "utterly discredited" by video evidence).

At 0:26 of the video, which depicts several individuals who appear to be law enforcement officers, allegedly the Individual Defendants, surrounding an individual on the ground, allegedly Mr. Moran, the Kimura arm lock allegedly is placed on Mr. Moran, and Officer Greco allegedly states, "I got his arm locked." *Id.* ¶ 35.

At 0:35 of the video, Officer Greco allegedly states, "Boss we got one arm." *Id.* ¶ 34.

At 0:37 of the video, Officer Greco allegedly states, "Boss we got one arm secure." *Id.* ¶ 36.

At 0:42 of the video, Officer Greco allegedly states, "I got this arm." *Id.* ¶ 37.

At 0:43 of the video, Officer Greco allegedly states, "Get on this side and get this arm out." At that point, Officer Tornga allegedly states, "Please move your arm." *Id.* ¶¶ 38–39.

At 0:49 of the video, Officer Greco allegedly states, "We will break your f*cking arm, so you better cooperate." *Id.* ¶ 40.

At 0:51 of the video, Mr. Moran allegedly states, "Why would you do that?" *Id.* ¶ 41.

At 0:53 of the video, Mr. Moran allegedly states, "It is already locked." *Id.* ¶ 42.

From 0:59 to 1:06 of the video, Officer Greco allegedly "twists the Kimura arm lock up and toward Mr. Moran's head," after which a "loud cracking/popping sound [allegedly] is audible," and Mr. Moran "moans." *Id.* ¶ 43.

At 1:18 of the video, Sergeant O'Donnell allegedly states, "Anyone need an ambulance, I heard something pop." *Id.* ¶ 44.

At 1:28 of the video, Mr. Moran allegedly states, "It's fine, you broke my arm, who cares." *Id.* ¶ 45.

At 1:30 of the video, Mr. Moran allegedly states, "Dude, you broke my arm, big deal." *Id.* ¶ 46.

5

At 1:36 of the video, Mr. Moran allegedly states, "I was on the ground already when you wanted to f*ck with me, so what's up?" *Id.* ¶ 47.

From 1:39 to 1:43 of the video, Mr. Moran allegedly states, "Look, I don't give a f*ck honestly, this is a lot of pain. This is a lot of pain." *Id.* ¶ 48.

At 1:52 of the video, an individual allegedly states, "Relax." *Id.* ¶ 49.

From 2:08 to 2:10 of the video, Mr. Moran allegedly states, "I was sitting on the floor when you guys wanted to beat me up." *Id.* ¶ 50.

At 2:14 of the video, Mr. Moran allegedly states, "Get off me! A paramedic is the only one who can touch me. Get off me!" *Id.* ¶ 51.

A female voice then allegedly states, "Sean, just wait for a medic to get here, wait for a medic to get here, we'll strap him to a stretcher and he can complain as much as he wants. That's fine." *Id.* ¶ 52.

At 2:25 of the video, Mr. Moran allegedly states, "Exactly, let the paramedics." *Id.* ¶ 53.

From 2:49 to 2:51 of the video, Mr. Moran allegedly states, "Good, f*cking break my arm, brother. No need to break my arm. You broke my arm, you're in trouble!" *Id.* ¶ 54.

At 2:52 of the video, Sergeant O'Donnell allegedly states, "Knock it off and follow what you are being told to do." *Id.* ¶ 55.

From 3:00 to 3:05 of the video, Mr. Moran allegedly states, "Get off me, get off me." *Id.* ¶ 56.

At 3:09 of the video, Mr. Moran allegedly states, "I have been complying since the minute you pulled over! Get off me, man!" *Id.* ¶ 57.

At 3:35 of the video, Sergeant O'Donnell allegedly states, "You going to do what we ask you to do?" *Id.* ¶ 58.

At 3:40 of the video, Mr. Moran allegedly states, "Don't mind that sh*t an hour later you had me sitting down for nothing, right? Don't add to it if you don't have nothing else to add to it, got it? You got me scared, right, b***h?" *Id.* ¶ 59.

At 3:57 of the video, Sergeant O'Donnell allegedly pushes Mr. Moran onto his side, allegedly being helped by Officers Tornga and Scaglio. *Id.* ¶ 60. "While placing his weight on [Mr.] Moran along with the others," Sergeant O'Donnell allegedly states, "that a boy." *Id.* ¶ 61.

From 5:28 to 5:37 of the video, Mr. Moran allegedly states to a medic, "Are you documenting this?" *Id.* ¶ 63. The medic allegedly responds, "yeah." *Id.* Mr. Moran allegedly replies, "He broke my arm." *Id.*

From 5:42 to 5:43 of the video, Mr. Moran allegedly states, "Can you tell him to get off me please, I am complying with the paramedics. Tell him to get off me." *Id.* ¶ 64.

From 10:19 to 10:33 of the video, Mr. Moran allegedly "consistently" states, "Get off me!" to the officers who allegedly pushed him to the ground while he allegedly was handcuffed. *Id.* ¶ 65.

From 10:34 to 10:39 of the video, Sergeant O'Donnell allegedly "puts an elbow in Mr. Moran['s] collarbone area," then allegedly "places both hands around Mr. Moran's neck, presses down forcefully" and allegedly states, "Listen, I am done playing around with you, do you understand?" *Id.* ¶ 66.

At 10:39 of the video, Mr. Moran allegedly states, "Get him off me," but no one allegedly "comes to his aid." *Id.* ¶ 67.

At 10:41 of the video, Officer Tornga allegedly states, "Stop resisting." *Id.* ¶ 68.

7

At 10:50, 11:00, 11:06, and 11:21, Mr. Moran allegedly states, "He choked me," which he allegedly states again at 11:23 of the video but allegedly is "muffled by the towels placed over his head." *Id.* ¶ 69.

Mr. Moran allegedly "sustained multiple blows to the . . . head and body," but allegedly never "str[uck] at the defendant officers." *Id.* ¶ 70.

After the interaction with the Individual Defendants, Mr. Moran allegedly "was taunted, tackled, and choked while in handcuffs with a severely fractured left arm." *Id.* ¶ 72. Defendants allegedly "removed [Mr. Moran] from the hospital and returned him to jail, thereby prevent[ing] him from receiving adequate medical treatment." *Id.* ¶ 77.

The Individual Defendants allegedly "attempted to cover up the true facts of this incident by creating misleading police reports and investigation material, spoliating evidence and leveling false charges against [Mr. Moran], most serious of which was that he had assaulted them." *Id.* ¶ 74. Defendants allegedly have "continue[d] to prosecute" Mr. Moran "for over two years," despite allegedly "being advised that [Mr. Moran] was mentally impaired at the time and in need of a diversion program to address his medical needs." *Id.* ¶ 75.

Allegedly as a result of the interaction with Defendants, Mr. Moran sustained injuries including a "fractured left arm," "head trauma," "back trauma," "pain to neck," "post-traumatic stress disorder," "post traumatic headaches," "severe nerve damage," "post traumatic insomnia," and "exacerbation of prior injuries." *Id.* ¶ 76. Mr. Moran allegedly "now suffers with permanent physical injuries," and "was forced to incur expenses for hospitalization, x-rays, medical care and attention, therapy, pharmaceuticals, etc.," and "it is reasonably probable that [his] injuries or some of them[] will require future medical treatment and expenditures." *Id.* ¶ 78–79.

Mr. Moran also allegedly has suffered "loss of liberty, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights" as a result of the alleged interaction with Defendants. *Id.* ¶ 83.

### B.      Procedural History

On May 14, 2019, Mr. Moran filed a Complaint. Compl., ECF No. 1 (May 14, 2019).

On November 15, 2019, Mr. Moran filed an Amended Complaint. Am. Compl.

On November 20, 2019, Mr. Moran moved for default judgment as to all Defendants. Letter, ECF No. 25 (Nov. 20, 2019). That same day, Mr. Moran moved to withdraw his request for default judgment. Letter, ECF No. 26 (Nov. 20, 2019). The next day, the Court granted Mr. Moran's request to withdraw his motion for default judgment and denied as moot the motion for default judgment. Order, ECF No. 27 (Nov. 21, 2019); Order, ECF No. 28 (Nov. 21, 2019).

On November 27, 2019, both the Individual Defendants and the Town filed Answers to the Amended Complaint. Answer and Affirmative Defenses to Pl.'s Am. Compl. of Defs. Andrew Greco, Sean P. O'Donnell, Brian N. Tornga, Hayes Sgaglio, Albert Escoffery, Danielle Petruso, Peter Tesei, in his Individual Capacity and James Heavey, in his Individual Capacity, ECF No. 29 (Nov. 27, 2019) ("Defs.' Answer"); Answer and Affirmative Defenses to Pl.'s Am. Compl. by Defs. Town of Greenwich and Def. Town of Greenwich Police Dep't, ECF No. 30 (Nov. 27, 2019) ("Town Answer").

On March 25, 2020, Mr. Moran filed a second motion for default judgment as to the Individual Defendants. Letter, ECF No. 31 (Mar. 25, 2020). That next day, the Court denied the motion, noting the Second Circuit's preference for resolving cases on the merits. Order, ECF No. 33 (Mar. 26, 2020) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)).

On September 11, 2020, Mr. Moran moved for judgment on the pleadings and to dismiss Sergeant O'Donnell in his individual capacity under Rule 41 of the Federal Rules of Civil Procedure. Pl.'s Mot.

That same day, Sergeant O'Donnell consented to dismissal. O'Donnell Reply.[3]

On September 29, 2020, the Town filed an objection to Mr. Moran's motion for judgment on the pleadings. Obj. to Pl.'s Mot. for J. on the Pleadings, ECF No. 57 (Sept. 29, 2020) ("Town Opp'n.").

On November 20, 2020, Mr. Moran withdrew his motion to dismiss the claims against Sergeant O'Donnell in his individual capacity and, in the same filing, replied to the Town's objection to his motion for judgment on the pleadings. Pl.'s Reply.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(c), "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

In deciding a motion for judgment on the pleadings, the Court applies the same standard applicable to motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

As a result, the "complaint must contain sufficient factual matter, accepted as true, to

---

[3] Sergeant O'Donnell filed a later notice of consent, *see* Notice of Consent to Pl.'s Mot. to Dismiss (Doc. 54) by Def., Sean P. O'Donnell, ECF No. 67 (Nov. 20, 2020), that appears to be substantively duplicative of his earlier consent.

state a claim to relief that is plausible on its face." *Id*. A court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff has stated a claim upon which relief may be granted, such that it should be entitled to offer evidence to support its claim. *See id*. (citation omitted).

While a court must accept as true the allegations in a complaint, this requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

In determining a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), "the court may consider any of the pleadings, including the complaint, the answer, and any written instruments attached to them." 2 Moore's Federal Practice 3D § 12.38 (2016); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (a court need not convert a motion to dismiss into a motion for summary judgment when it considers "'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference[,]'" and noting that "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint" (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995))).

### III. DISCUSSION

Mr. Moran argues that judgment on the pleadings is warranted as to the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh causes of action.[4] Pl.'s Mot. at 7. As Mr. Moran argues, the Town has "admit[ted] that the individual defendants arrested Robert Moran"; "that the officers were acting under color of law and within the scope of their employment" in doing so; and the Town therefore is "vicariously liable for the acts of the officers under state law." Pl.'s Mot ¶¶ 3–6.

In Mr. Moran's view, "[u]pon information and belief, the Town . . . will not deny the facts" asserted in Mr. Moran's motion and "depicted in the cell phone video" provided in the Amended Complaint. *Id.* ¶¶ 7–8. As Mr. Moran argues, all of the elements of an excessive force claim are satisfied on the pleadings and, specifically, proven by the video, as "[t]he first element, acting under color of state law, is not in dispute and is admitted," *id.* ¶ 11; that the force depicted in the video is excessive on its face, as "[a] reasonably competent police officer would not consider breaking Mr. Moran's arm after gaining control and restricting his airway after his arm was broken and handcuffed," *id.* ¶ 13; that "the Town agents' use of excessive force as detailed in the [video] clips . . . was a proximate cause of the injuries or losses that [Mr. Moran] sustained," *id.* ¶ 14; and the Town "knew or should have known fracture and airway restriction were the natural and probable consequence of the acts," *id.*

In Mr. Moran's view, "[t]he video tape evidence included in the pleadings and the Town's answer support a judgment in favor of the plaintiff [Mr.] Moran for 42 U.S.C. § 1983 violations, municipal liability, deliberate indifference, malicious prosecution, abuse of process, excessive force, battery, negligence, gross negligence and recklessness." *Id.* ¶ 16.

---

[4] Namely, all claims but the unlawful search claim. *See* Am. Compl. ¶¶ 96–99.

Mr. Moran also argues that "two defendant policy makers sued in their official capacities have not answered the amended complaint in their official capacities," which in his view "requires a finding that the Town is responsible for the defendant policy makers' acts in the Fourth, Sixth, Eight[h], Ninth, Tenth and Eleventh claims for relief." *Id.* ¶ 17.

The Town argues that judgment on the pleadings must be denied because (1) the Town has denied the acts alleged, Town Opp'n at 3; (2) the Town's denial of the allegations concerning what the video depicts "cannot constitute ratification or acquiescence," *id.* at 6 (emphasis omitted); and (3) answers by the two policy-making defendants sued in their official capacities "were not required." *Id.* at 7 (emphasis omitted).

Specifically, the Town argues that though it made several admissions in its Answer, it has admitted only, in relevant part, that, during the times relevant to the allegations in the Amended Complaint, "the individual defendants were acting within the scope of duty and authority," *id.* at 3; *see also* Town Answer ¶ 9; "the individual defendants were acting under color of law," Town Opp'n at 3-4; *see also* Town Answer ¶ 10; and that "the actions of the Defendants were taken while acting within the scope of their employment," Town Opp'n at 4; *see also* Town Answer ¶ 11; and that "the actions of the individual defendants were taken while acting in furtherance of their duty," Town Answer ¶ 12. These admissions, the Town argues, were made only in response to the section of the Amended Complaint entitled "Parties." Town Opp'n at 3–4. In the Town's view, however, it "did not admit in its response that all of the acts as alleged in the Amended Complaint were done by the individual defendants while acting within the scope of their employment," and in fact "[t]hose allegations have been denied." *Id.* at 4 (citing Town Answer ¶ 6 ("The Defendants deny paragraphs 25-69, 70, 71, 72-75, 76-84, 87, 90, 91, 93, 94, 95, 97-101, 103-105, 109-116, 118-121, 123, 124-126, 128-135, 137-143, 145 based upon information

13

and belief and likewise deny unnumbered paragraph 146, which forms the entirety of the 11th Count.")). The Town argues it has, *inter alia*, "denied that the defendants deprived [Mr.] Moran of" his constitutional rights; "denied the assertions that one or more of the individual defendants used excessive force, subjected the plaintiff to an illegal search, or arrested the plaintiff without probable ca[u]se and/or to obtain a collateral, illegitimate objective"; and stated that "the defendants lack knowledge or information sufficient to base a belief about the truth of [certain] matters contained therein." *Id.* at 4–5.

As to the Town's second argument, the Town argues that Mr. Moran's "assertion that the facts concerning the cell phone video clips 'are not in dispute' clearly is mistaken," as "[a]ll defendants have denied that excessive force was used," and "[t]he question of the use of force and its reasonableness under the unique circumstances of this case cannot be resolved on a motion for judgment on the pleadings." Town Opp'n at 6.

Finally, the Town argues that the two defendant policy makers sued in their official capacities who have not answered the Amended Complaint, namely Chief Heavey and First Selectman Tesei, were not required to file responses to Mr. Moran's pleadings because "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" and further, that "where the government entity has received notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 7 (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).

The Court agrees.

As an initial matter, though Mr. Moran's motion for judgment on the pleadings requests relief as to the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh

causes of action, *see* Pl.'s Mot. at 7, namely all of the claims except for the unlawful search claim under 42 U.S.C. § 1983, *see* Am. Compl. ¶¶ 96–99, it does not substantively address how, on the face of the pleadings and the evidence incorporated into the Amended Complaint, the specific elements of the claims of deliberate indifference, malicious prosecution, abuse of process, battery, negligence, gross negligence, and recklessness are satisfied. Mr. Moran's conclusory statement that "[t]he video tape evidence . . . support[s] a judgment in favor of [Mr.] Moran for 42 U.S.C. §[]1983 violations, municipal liability, deliberate indifference, malicious prosecution, abuse of process, excessive force, battery, negligence, gross negligence and recklessness," does not suffice to resolve those claims in his favor at this stage of the proceedings. Am. Compl. ¶ 16. Indeed, many of these claims require findings, many as to the intent or subsequent conduct of the Individual Defendants which, even if the Court were to view the video tape as conclusive support for Mr. Moran's allegations, could not be proven with the tape alone and on the face of Mr. Moran's pleadings.[5]

Beyond these conclusory allegations, Mr. Moran's motion for judgment on the pleadings focuses substantively on the excessive force claim, which also is an insufficient basis for granting the motion.

The Fourth Amendment prohibits the use of excessive force during arrests. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). Determining whether the force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth

---

[5] For example, "[a] plaintiff seeking to maintain a claim for malicious prosecution" must show, *inter alia*, "that criminal proceedings were initiated or continued against plaintiff, with malice and without probable cause, and were terminated in his or her favor," *Ravalese v. Town of East Hartford*, No. 3:16-cv-1642 (VAB), 2019 WL 2491657, at *6 (D. Conn. June 14, 2019) (citing *Lanning v. City of Glen Falls*, 908 F.3d 19, 24 (2d Cir. 2018)); to prove a recklessness claim, a plaintiff "must demonstrate a state of mind that indicates 'more than negligence, more than gross negligence,'" *id.* at *16; an abuse of process claim requires conduct "intended primarily to accomplish a purpose for which the process is not designed," *Schienman v. Glass & Braus LLC*, No. 3:18-cv-1551 (SRU), 2020 WL 6875139, at *14 (D. Conn. Nov. 23, 2020) (citing *Passaro-Henry v. Allstate Ins. Co.*, 2010 WL 5174405, at *3 (D. Conn. Dec. 15, 2010)).

Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (internal quotation marks omitted). In making that determination, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id*. (internal quotation marks omitted).

It is an objective standard that considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396–97; *see also Elliott v. Cty. of Monroe*, 115 F. App'x 497, 498 (2d Cir. 2004) (a reasonableness inquiry "must consider all the facts of the case, including the severity of the crime, whether the arrestee posed an immediate threat to the safety of others, and whether she actively resisted the arrest").  As a result, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (citing *O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003)). And, to state a claim under § 1983, a plaintiff must allege facts showing that the relevant individual was acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under state law.").

While the Town has admitted that, as a general matter, at all times relevant to the allegations set forth in the Complaint, defendants were acting under color of state law, within the scope of duty and authority of the Town, and within the scope of their employment, *see* Town Answer ¶¶ 8–12, the Town expressly has denied the significant majority of the factual

16

allegations set forth by Mr. Moran, *see id.* ¶ 6, including Mr. Moran's recitation of the videotape, the injuries suffered by Mr. Moran, the reasons for any charges brought against Mr. Moran, Mr. Moran's expenses as to hospitalization and medical care post-injury, and any emotional distress, embarrassment, and humiliation suffered by Mr. Moran, *see* Am. Compl.

Moreover, to the extent the Court can view the YouTube video provided by Mr. Moran as an accurate representation of the events that allegedly occurred on May 14, 2017, the video itself, given the Town's denials, is insufficient to show that the "material facts are undisputed and . . . a judgment on the merits is possible merely by considering the contents of the pleadings," *Sellers*, 842 F.2d at 642, given the fact-intensive inquiry of an excessive force claim.

For example, the video begins midway through the interaction it depicts, with an individual on the ground and several individuals in various positions around the individual on the ground; it does not show how the interaction began, or any of the relevant parties' conduct before the physical contact between the parties commenced; the video does not, in the Court's view, show a clear image of the individual on the ground, allegedly Mr. Moran, including when and whether he was handcuffed, any resistance he may have posed, whether he was armed, and whether he was a threat to officers' safety, *see Elliott*, 115 F. App'x at 498; the video does not depict the Individual Defendants' actions following the interaction, such as their alleged failure to provide Mr. Moran adequate medical treatment, Am. Compl. ¶ 77; and the video does not clearly depict, if any, the majority of Mr. Moran's alleged injuries, including, *inter alia*, "post-traumatic stress disorder," "exacerbation of prior injuries," and "post traumatic headaches," *id.* ¶ 76.

Accordingly, given the Town's denial of the relevant factual allegations, the fact-intensive inquiry of many of Mr. Moran's claims,[6] and specifically the excessive force claim, and the failure of the video, even if an accurate depiction of the events Mr. Moran alleges, to show there is no material dispute as to liability of the Town and the Individual Defendants,[7] and consistent with the Second Circuit's preference that cases be decided on the merits, *see Enron Oil Corp.*, 10 F.3d at 95, the Court will deny Mr. Moran's motion for judgment on the pleadings, and, given his withdrawal of his motion to dismiss the claims against Sergeant O'Donnell, also will deny as moot his motion to dismiss.[8]

## IV.     CONCLUSION

For the foregoing reasons, Mr. Moran's motion for judgment on the pleadings is **DENIED**, and his motion to dismiss the individual capacity claims against Sergeant O'Donnell is **DENIED as moot**.

---

[6] Indeed, the parties' ongoing discovery disputes, *see, e.g.*, Order, ECF No. 105 (July 19, 2021) (the Court's ruling on a host of discovery issues posed by the parties during a discovery conference), highlight the fact-intensive nature of the claims at issue in this case.

[7] Moreover, the Town has set forth several affirmative defenses, which Mr. Moran does not address in his motion for judgment on the pleadings, including that Mr. Moran's claims are barred by qualified and governmental immunity, Mr. Moran's contributory negligence and recklessness, and the doctrine of the assumption of the risk, as well as that any force used was justified under state law, and that the John Doe defendants and the Greenwich Police Department are not parties who can be sued. Town Answer at ¶¶ 2–9. The Individual Defendants also have set forth these affirmative defenses. *See* Defs.' Answer ¶¶ 2–9. To the extent these affirmative defenses are successful, any municipal or vicarious liability that allegedly may be imparted to the Town also could be defeated, an argument Mr. Moran does not address.

[8] As to Mr. Moran's argument that the two individual policy-making defendants sued in their official capacity, namely Peter Tesei and James Heavey, were required to file an Answer to the Amended Complaint, the Court already has rejected this argument in denying Mr. Moran's earlier motion for default judgment on this basis. *See* Order, ECF No. 33 (March 26, 2020); Second Mot. for Default J., ECF No. 31 (Mar. 25, 2020). Given the Town's Answer, the Court will not construe any failure to respond by these Defendants to be, as Mr. Moran suggests, an admission that they "do not refute the allegations in the Complaint," Pl.'s Mot. ¶ 21. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. [. . .] [A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." (internal quotation marks and citations omitted)).

**SO ORDERED** at Bridgeport, Connecticut, this 13th day of August, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE