### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

ROBERT MORAN,
*Plaintiff*,

v.

PETER TESEI ET AL.,
*Defendants*.

No. 3:19-cv-722 (VAB)

### RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Robert Moran ("Plaintiff") has sued Peter Tesei ("Former First Selectman Tesei"), Andrew Greco ("Officer Greco"), James Heavey ("Chief Heavey"), Sean P. O'Donnell ("Sergeant O'Donnell"), Brian N. Tornga ("Officer Tornga"), Hayes Sgaglio ("Officer Sgaglio"), Albert Escoffery ("Officer Escoffery"), Danielle Petruso ("Sergeant Petruso"), the Town of Greenwich (the "Town"), and the Greenwich Police Department (collectively, "Defendants") for conduct related to the use of force during Mr. Moran's arrest on May 14, 2017. Am. Compl. ¶¶ 7–23, ECF No. 24 ("Am. Compl."). Mr. Moran alleges claims for deprivation of federal rights ("Count One"), excessive force ("Count Two"), unlawful search ("Count Three"), malicious prosecution and abuse of process ("Count Four"), municipal liability ("Count Five"), conspiracy to violate Plaintiff's civil rights ("Count Six"), assault and battery ("Count Seven"), negligent infliction of emotional distress ("Count Eight"), intentional infliction of emotional distress ("Count Nine"), negligence ("Count Ten"), and gross negligence and recklessness ("Count Eleven"). *Id.* ¶¶ 85–145.

On February 17, 2023, Officer Greco, Sergeant O'Donnell, Officer Tornga, Officer Sgaglio, Officer Escoffery, and Sergeant Petruso ("Individual Defendants") filed a motion for

summary judgment arguing that all counts against them should be dismissed. *See* Mot. for Summ. J., ECF No. 215-1.

On February 17, 2023, the Town, Greenwich Police Department, Former First Selectman Tesei, and Chief Heavey ("Town Defendants") filed a motion for summary judgment arguing that all counts against them should be dismissed. *See* Mot. for Summ. J., ECF No. 216.

On March 24, 2023, Defendants filed motions to strike Mr. Moran's exhibits submitted as part of his opposition to the motions for summary judgment. *See* Mot. to Strike Pl.'s Exs. Submitted in Supp. of Opp'n, ECF No. 229; Mot. to Strike Pl.'s Exs. Submitted in Supp. of Opp'n, ECF No. 232.

On March 24, 2023, Mr. Moran filed a motion to consolidate this case with a related case, docket number 3:23-cv-00330 (VAB). *See* Mot. to Consolidate Cases, ECF No. 230 ("Mot. to Consolidate").

For the following reasons, the Town Defendants' motion for summary judgment is **GRANTED.**

The Individual Defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part.**

The Individual Defendants' motion for summary judgment is granted as to all claims against Sergeant O'Donnell, Officer Tornga, Officer Sgaglio, Officer Escoffery, and Sergeant Petruso.

The Individual Defendants' motion for summary judgment is denied as to the excessive force claim (Count Two) and the assault and battery claim (Count Seven) against Officer Greco. The Individual Defendants' motion for summary judgment is granted as to all other claims against Officer Greco.

Defendants' motions to strike are **DENIED as moot**.

Mr. Moran's motion to consolidate this case with docket number 3:23-cv-00330 (VAB) is **DENIED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background[1]

On May 14, 2017, Mother's Day, Mr. Moran was at Cynthia Lorys' ("Ms. Lorys") in Greenwich, Connecticut. Local Rule 56(a)1 Statement of Facts in Supp. of Mot. for Summ. J., ECF No. 215-2 ("Defs.' Statement of Facts").[2]

In the years before 2017, Mr. Moran sought mental health treatment as Mother's Day approached because his mother passed away. *Id.* ¶¶ 2–3. In 2017, Ms. Lorys, Mr. Moran's

---

[1] The facts are taken from Defendants' Local Rule 56(a)(1) Statements, and supporting exhibits filed by Defendants. *See* D. Conn. L. Civ. R. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact.").

Local Rule 56(a)(2) requires the party opposing summary judgment to submit a Local Rule 56(a)(2) Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)(1) Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)(2), 56(a)(3). Notably, Mr. Moran has not submitted a Rule 56(a)2 statement, but instead submitted a copy of the Complaint filed in 3:23-cv-00330 (VAB). *See* Pl.'s First Statement of Material Facts re Mot. for Summ. J., ECF No. 220 ("Pl.'s Statement of Facts"). Mr. Moran's submission does not include a response to the facts included in Defendants' statements of fact and does not include any citations to the factual record in this case that would support the facts alleged in the 3:23-cv-00330 (VAB) Complaint. Therefore, Mr. Moran has admitted Defendants' statements of facts for purposes of the motions for summary judgment, with the exception of any facts that the Court finds are not supported by the record. *See* D. Conn. L. Civ. R. 56(a)(1), (3) (stating that "[e]ach material fact set forth in the Local Rule 56(a)1 Statement and support by the evidence will be deemed admitted . . . unless such fact is controverted by the Local Rule 56(a)2 Statement" and "[f]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence"); *see also Miron v. Town of Stratford*, 976 F. Supp. 2d 120, 127 (D. Conn. 2013) ("Where a party fails to appropriately deny material facts set forth in the moving party's 56(a)1 statement, and where those facts are supported by evidence in the record, those facts are deemed to be admitted."); *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

[2] The Town Defendants adopted the Individual Defendants' statement of facts, *see* Local Rule 56(a)1 Statement in Supp. of Mot. for Summ. J., ECF No. 216-2, and therefore, the Court will refer to the Individual Defendants' statement of facts as Defendants' statement of facts.

significant other at the time, planned to visit her grandmother with her three daughters. *Id.* ¶ 4.
Ms. Lorys invited Mr. Moran, but he declined because he was not feeling well. *Id.* ¶ 5.

After Ms. Lorys and her daughters left, Mr. Moran threw food and drink on the walls,
floors, and kitchen, and knocked over a dresser. *Id.* ¶ 9.

Mr. Moran also called Ms. Lorys to tell her that he was in the midst of an anxiety attack
and needed help. *Id.* ¶ 10. Ms. Lorys returned to the apartment to find Mr. Moran outside; he
informed them that he had thrown food on the walls. *Id.* ¶ 11. After seeing the apartment, Ms.
Lorys asked Mr. Moran to leave. *Id.* ¶ 12.

Ms. Lorys eldest daughter called 911 to report the vandalization. *Id.* ¶ 13. While she was
on the phone with 911, Mr. Moran took the phone from the eldest daughter and ended the call.
*Id.* Officer Greco was asked to respond to the call and was told that it sounded like the phone
was taken from the caller before the line was disconnected. *Id.* ¶ 14–15.

Once Officer Greco arrived at the apartment, the eldest daughter brought Officer Greco to
the area outside where Mr. Moran was located. *Id.* ¶ 17. Mr. Moran was agitated and yelling at
another male, so Officer Greco separated the two men. *Id.* ¶¶ 18–19.

Officer Sgaglio then arrived and asked Ms. Lorys and her three daughters to go across the
street to wait. *Id.* ¶ 20–21.

Sergeant O'Donnell arrived next and joined Officers Greco and Sgaglio behind the
apartment where Mr. Moran was located. *Id.* ¶ 22. Ms. Lorys then took Officer Sgaglio inside the
apartment and showed Officer Sgaglio the food, liquid, clothing, blankets, and other items
around the living room and kitchen. *Id.* ¶¶ 24–25. Ms. Lorys eldest daughter told Officer Sgaglio
that Mr. Moran took her phone from her while she was contacting 911. *Id.* ¶ 27.

Sergeant O'Donnell asked Mr. Moran to sit on the curb, which he did. *Id.* ¶ 23. Officer

Sgaglio came back outside and told Sergeant O'Donnell and Officer Greco that there was probable cause to arrest Mr. Moran. *Id.* ¶ 28. Sergeant O'Donnell told Mr. Moran that he was under arrest and ordered Mr. Moran to lie on the ground on his stomach, but Mr. Moran did not comply. *Id.* ¶¶ 29–30. Instead, Mr. Moran stood up and began to move towards the rear parking lot. *Id.* ¶ 30.

Officers Greco and Sgaglio and Sergeant O'Donnell attempted to gain control of Mr. Moran and place him in handcuffs but were not able to, so they took Mr. Moran to the ground. *Id.* ¶¶ 31–32. While on the ground, Mr. Moran tucked his arms under his body so the officers could not handcuff him. *Id.* at 34.

Officer Escoffery then arrived on the scene to assist. *Id.* ¶ 36. Officer Escoffery grabbed Mr. Moran's legs to keep him from kicking and attempted to use a baton to force Mr. Moran to comply. *Id.* ¶¶ 36–37.

Sergeant Petruso arrived next and placed her foot on Mr. Moran's calf to stop his movement so she could assist with trying to handcuff Mr. Moran. *Id.* ¶ 40. Officers Greco and Sgaglio were able to place handcuffs on Mr. Moran's left wrist, but not his right. *Id.* ¶ 42.

Sergeant Tornga then arrived and grabbed Mr. Moran's right arm but was not able to reach the handcuffs attached to Mr. Moran's left wrist. *Id.* ¶¶ 44–46. Officer Greco moved his body to free Mr. Moran's left arm so Officer Tornga could connect the handcuffs to Mr. Moran's right hand; however, while doing this Officer Greco "heard a popping sound and felt Mr. Moran's left arm lose tension." *Id.* ¶¶ 47–48. After this, Officer Tornga was able to connect the handcuffs to Mr. Moran's right wrist. *Id.* ¶¶ 49–50.

Once in handcuffs, the officers sat Mr. Moran up and attempted to render medical aid to a cut on Mr. Moran's forehead. *Id.* ¶¶ 51–53. Mr. Moran did not allow the officers to render first

aid because he only wanted medics to attend to his injuries. *Id.* ¶ 54.

Mr. Moran "made a motion as if he was going to kick Sergeant O'Donnell," and so the officers placed Mr. Moran in the prone position on the ground. *Id.* ¶¶ 55–56.

The ambulance arrived, and Mr. Moran was placed on the stretcher. *Id.* ¶¶ 57–58. Mr. Moran attempted to get up from the stretcher, and the officers physically held him down. *Id.* ¶ 59. Mr. Moran was transported to Greenwich Hospital for treatment. *Id.* ¶ 60.

### B. Procedural History

On May 14, 2019, Mr. Moran filed the Complaint. Compl., ECF No. 1.

On November 15, 2019, Mr. Moran filed an Amended Complaint against all Defendants, Am. Compl., and a motion for default judgment, Mot. for Default J. as to All Defs., ECF No. 26.

On November 20, 2019, Mr. Moran filed a motion to withdraw the motion for default judgment. Mot. to Withdraw Request for Default, ECF No. 26. On November 21, 2019, the Court granted the motion to withdraw, Order, ECF No. 27, and denied as moot the motion for default judgment, Order, ECF No. 28.

On March 25, 2020, Mr. Moran filed a motion for default entry under Rule 55(a) against the Individual Defendants, Former First Selectman Tesei, and Chief Heavey. Second Mot. for Default Entry 55(a), ECF No. 31. On the same day, these Defendants filed an objection to the second motion for default entry. Obj. to Second Mot. for Default Entry 55(a), ECF No. 32.

On March 26, 2020, the Court denied Mr. Moran's second motion for default entry. Order, ECF No. 33.

On September 4, 2020, the Individual Defendants, Former First Selectman Tesei, and Chief Heavey filed objections to Mr. Moran's discovery. *See, e.g.*, Obj. to Disc. by Peter Tesei, ECF No. 51.

On September 11, 2020, Mr. Moran filed a motion for judgment on the pleadings. First Mot. for J. on the Pleadings, ECF No. 54. On the same day, Sergeant O'Donnell filed a response to the motion for judgment on the pleadings, stating he consented to dismissal of all official capacity claims against him. Resp. to Mot. for J. on Pleadings, ECF No. 55.

On September 29, 2020, the Town and Greenwich Police Department filed an objection to Mr. Moran's motion for judgment on the pleadings. Obj. to First Mot. for J. on the Pleadings, ECF No. 57.

On November 20, 2020, Sergeant O'Donnell filed a notice of consent to Mr. Moran's motion for judgment of the pleadings to the extent it also dismissed the individual capacity claims against Sergeant O'Donnell. Notice, ECF No. 67.

On November 20, 2020, Mr. Moran filed a notice withdrawing consent to dismiss the individual capacity claims against Sergeant O'Donnell. Notice, ECF No. 68.

On February 5, 2021, Officer Greco filed a motion to amend or correct his response to requests for admission. Mot. to Amend/Correct, ECF No. 81.

On March 16, 2021, the Court granted Officer Greco's motion to amend or correct. Order, ECF No. 84.

On May 28, 2021, Mr. Moran filed a motion for more definite statement and motion to amend or correct the protective order. Mot. for More Definite Statement, ECF No. 93; Mot. to Amend/Correct Protective Order, ECF No. 94. The Court denied the motions without prejudice and scheduled a discovery conference to address the issues. Order, ECF No. 95.

On June 30, 2021, the Court held a brief discovery conference. Min. Entry, ECF No. 100.

On July 7, 2021, Defendants filed a response to the issue identified during the discovery conference. Resp. to 101 Order, ECF No. 102.

On July 17, 2021, Mr. Moran filed a reply to Defendants' response. Reply, ECF No. 104.

On July 19, 2021, the Court issued an order resolving the discovery issues identified by the parties. Order, ECF No. 105.

On August 13, 2021, the Court denied Mr. Moran's motion for judgment on the pleadings and denied as moot Mr. Moran's motion to dismiss the individual capacity claims against Sergeant O'Donnell. Order, ECF No. 108.

On September 30, 2021, Mr. Moran filed a request for a discovery hearing. First Resp. and Request for Hrg, ECF No. 110.

On October 1, 2021, the Court scheduled a discovery conference and ordered Defendants to respond to Mr. Moran's written submission. Order, ECF No. 111.

On October 8, 2021, Defendants filed a response to Mr. Moran's written submission. Resp., ECF No. 113; Resp., ECF No. 114.

On October 12, 2021, the Court cancelled the discovery hearing and amended the pretrial schedule. Order, ECF No. 115.

On February 11, 2022, Mr. Moran filed another motion for a discovery hearing. Mot. for Hrg Disc., ECF No. 125.

On February 14, 2021, the Court denied Mr. Moran's motion for a discovery conference without prejudice and ordered Mr. Moran and Defendants to file a written response. Order, ECF No. 126.

Mr. Moran filed a written response on February 17, 2022, and February 22, 2022. First Resp. to Request for Justification, ECF No. 129; Resp. Exs., ECF No. 130; Second Resp. to Request for Justification, ECF No. 132.

On March 9, 2022, Defendants filed discovery updates, as requested by the Court. Status Rep., ECF No. 138; Resp. to 136 Order, ECF No. 139.

On March 16, 2022, the Court held a discovery conference. Min. Entry, ECF No. 140.

On March 17, 2022, the Court ordered Sergeant O'Donnell and Officer Sgaglio to produce certain discovery materials under seal. Order, ECF No. 141.

On March 31, 2022, Mr. Moran filed a motion for reconsideration of the Court's March 17, 2022 discovery order. Mot. for Reconsideration, ECF No. 143.

On March 31, 2022, the Court denied the motion for reconsideration. Order, ECF No. 145.

On April 18, 2022, Mr. Moran and Defendants provided the Court with an update on the discovery dispute. Resp. to 126 Order, ECF No. 149; Status Rep., ECF No. 150; Resp. Disc. Update, ECF No. 151.

On May 17, 2022, the parties filed status reports regarding the ongoing discovery disputes. Status Rep.; ECF No. 154; Status Rep., ECF No. 155; Status Rep., ECF No. 156.

On May 18, 2022, the Court set a briefing schedule for the parties to move to compel outstanding discovery. Order, ECF No. 157.

On May 21, 2022, Mr. Moran filed a motion to compel written discovery and deposition. Mot. to Compel, ECF No. 159. On May 27, 2022, Defendants filed objections to the motion to compel. Obj., ECF No. 160; Obj., ECF No. 161. On June 2, 2022, Mr. Moran filed a reply in support of the motion to compel. Reply to Resp., ECF No. 162.

On June 6, 2022, the Court held a discovery conference. Min. Entry, ECF No. 164. The same day, the Court ordered Defendants to file a status report regarding the ongoing discovery issues. Order, ECF No. 165.

On June 17, 2022, the parties filed status reports and a proposed scheduling order. Status Rep., ECF No. 167; Status Rep., ECF No. 168; Status Rep., ECF No. 170.

The parties continued to file status reports in July 2022, August 2022, September 2022, and October 2022. *See, e.g.*, Status Rep., ECF No. 173; Status Rep., ECF No. 176; Status Rep., ECF No. 180.

On October 14, 2022, Mr. Moran filed a motion for a discovery conference. Mot. for Disc. Conf., ECF No. 186.

On October 18, 2022, the Court ordered Defendants to submit written responses to Mr. Moran's motion for a discovery conference. Order, ECF No. 189.

On October 21, 2022, Defendants filed a motion for a protective order and an objection to the continued deposition of Detective Morris. Mot. for Protective Order & Obj. to Continue Dep., ECF No. 190.

On October 21, 2022, Mr. Moran filed a response to Defendants' motion for a protective order. Reply to Resp. to Mot. for Protective Order, ECF No. 191.

On October 27, 2022, non-party Detective Morris filed a reply to the motion for a protective order. Reply to Resp. to Mot. for Protective Order, ECF No. 192.

On November 2, 2022, the Court denied the motion to compel as moot, granted in part and denied in part the motion for conference, and granted in part and denied in part the motion for a protective order. Order, ECF No. 193.

On November 2, 2022, Mr. Moran filed a motion to compel, Mot. to Compel, ECF No. 194, which the Court denied on November 3, 2022, Order, ECF No. 196.

On November 17, 2022, Mr. Moran filed a status report that requested a discovery conference. Status Rep., ECF No. 199.

On November 18, 2022, the Court ordered the parties to submit written responses to the discovery issues identified in Mr. Moran's status report. Order, ECF No. 200.

On November 22, 2022, Defendants submitted a written response to these discovery issues. Resp. to 200 Order, ECF No. 201.

On November 23, 2022, the Court denied Mr. Moran leave to take the depositions as requested in his status report. Order, ECF No. 202.

On February 17, 2023, Defendants filed motions for leave to file a motion for summary judgment and accompanying Rule 56(a) statements in excess pages. Mot. for Leave to File Excess Pages, ECF No. 213.

On February 17, 2023, the Individual Defendants and Town Defendants each filed motions for summary judgment. Mot. for Summ. J., ECF No. 215; Mot. for Summ. J., ECF No. 216.

On February 19, 2023, the Court granted Defendants' motions for leave to file in excess pages. Order, ECF No. 217; Order, ECF No. 218.

On March 11, 2023, Mr. Moran filed a memorandum in opposition to Defendants' motions for summary judgment and a statement of material facts. Mem. of Law in Opp'n to Defs.' Mots. for Summ. J., ECF No. 219 ("Opp'n to Mots. for Summ. J."); Pl.'s Statement of Material Facts.

On March 13, 2023, Mr. Moran filed a notice of the related case, 3:23-cv-00330 (VAB). Notice of Related Case, ECF No. 222.

On March 24, 2023, Defendants filed replies in support of their respective motions for summary judgment. Reply to Resp. to Mot. for Summ. J., ECF No. 228 ("Town Defs.' Reply"); Reply to Resp. to Mot. for Summ. J., ECF No. 213 ("Individual Defs.' Reply").

11

On March 24, 2023, Defendants filed motions to strike the exhibits Mr. Moran filed in support of his opposition memorandum. Mot. to Strike Pl.'s Exs. Submitted in Supp. of Opp'n, ECF No. 229; Mot. to Strike Pl.'s Exs. Submitted in Supp. of Opp'n, ECF No. 232.

On March 24, 2023, Mr. Moran filed a motion to consolidate this case with 3:23-cv-00330 (VAB). Mot. to Consolidate.

On April 10, 2023, the Town Defendants filed an objection to Mr. Moran's motion to consolidated. Obj. to Mot. to Consolidate, ECF No. 233 ("Town Defs.' Obj. to Mot. to Consolidate"). On April 12, 2023, the Individual Defendants filed an objection to Mr. Moran's motion to consolidate. Obj. to Mot. to Consolidate, ECF No. 234 ("Individual Defs.' Obj. to Mot. to Consolidate").

## II.   STANDARD OF REVIEW

### A. Motion for Summary Judgment

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, *i.e.*, whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir.

2011), and will grant summary judgment only "if, under the governing law, there can be but one

reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

### B.  Motion to Strike

Under Federal Rule of Civil Procedure 37(c), "if a party fails to provide information or

identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that

information or witness to supply evidence on a motion . . . unless the failure was substantially

justified or is harmless." Rule 26(a) requires, *inter alia*, the disclosure of individuals likely to

have discoverable information, Fed. R. Civ. P. 26(a)(1)(A), and Rule 26(e) requires parties to

correct or supplement their Rule 26(a) disclosures and their discovery responses, upon learning

"that in some material respect the disclosure is incomplete or incorrect," Fed. R. Civ. P.

26(e)(1)(A).

### C.  Motion to Consolidate

A court may consolidate actions that share "common question[s] of law or fact." Fed. R.

Civ. P. 42(a); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990) ("Rule

42(a) of the Federal Rules of Civil Procedure empowers a trial judge to consolidate actions for

trial when there are common questions of law or fact to avoid unnecessary costs or delay."). "A

party moving for consolidation 'must bear the burden of showing the commonality of factual and

legal issues in different actions, and a district court must examine the special underlying facts

with close attention before ordering a consolidation.'" *R. W. Grand Lodge of Free & Accepted

Masons of Penn. v. Meridian Cap. Partners, Inc.*, 634 F. App'x 4, 6, (2d Cir. 2015) (quoting *In

re Repetitive Stress Inj. Litig.*, 11 F.3d 368, 373 (2d Cir. 1993)). "Differences in causes of action,

defendants, or the class period do not render consolidation inappropriate if the cases present

sufficiently common questions of fact and law, and the differences do not outweigh the interests

of judicial economy served by consolidation." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 34 (S.D.N.Y. 2012) (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007)). A "trial court has broad discretion to determine whether consolidation is appropriate." *Celotex*, 899 F.2d at 1284.

## III.   DISCUSSION

### A.  Motion for Summary Judgment

Defendants argue that all claims against them should be dismissed. Mem. in Supp. of Mot. for Summ. J., ECF No. 215-1 ("Individual Defs.' Mot. for Summ. J."); Mem. in Supp. of Mot. for Summ. J., ECF No. 216-1 ("Town Defs.' Mot. for Summ. J."). Additionally, in their reply briefs, Defendants argue that Mr. Moran has "waived all legal arguments in opposition to . . . Defendants' motion based on [Mr. Moran's] failure to adequately brief the issues raised." Individual Defs.' Reply at 1; Town Defs.' Reply at 1.

The Court will first address whether Mr. Moran has abandoned any of his claims. The Court will then address the remaining claims in turn.

### 1.    Abandoned Claims

When the non-movant submits "a partial response" to a motion for summary judgment "arguing that summary judgment should be denied as to some claims while not mentioning others," the court may find that the non-movant "abandon[ed] . . . the unmentioned claims." *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (citations and quotation marks omitted). "Pleadings often are designed to include all possible claims or defenses, and parties are always free to abandon some of them." *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014). "Generally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others," and "a

court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Id.*

Defendants argue in their reply brief that Mr. Moran has abandoned most, if not all, of his claims because he "failed to adequately contest both the factual and legal basis for the Defendants' motions for summary judgment. Individual Defs.' Reply at 4–5. Defendants emphasize that Mr. Moran's opposition "consists of a few paragraphs spread over just two (2) pages" and cites "a single reported decision . . . without any explanation or analysis as to why [the case] might apply to the facts of this case." *Id.* at 4. Defendants argue that Mr. Moran's other arguments "are unsupported by any controlling law, and contain no specific citation to" the factual record, as required by Local Rule 56. *Id.* (citations and quotation marks omitted).

Mr. Moran has not responded to this argument.

The Court agrees with Defendants in part.

Defendants' motions for summary judgment address each of Mr. Moran's eleven claims against each of the ten Defendants. *See generally* Individual Defs.' Mot. for Summ. J.; Town Defs.' Mot. for Summ. J.

In his opposition, which is three pages long, does not include citations to the record, and cites only *Scott v. Harris*, 550 U.S. 372, 380 (2007), Mr. Moran addresses only a few specific points. Opp'n to Mots. for Summ. J. First, Mr. Moran argues that the video clips show Officer Greco "broke Mr. Moran's arm and acknowledged it on the video." *Id.* at 2. Second, Mr. Moran argues that the Town Defendants, specifically Chief Heavey and First Selectman Tesei, "engage[d] in a custom and practice of failing to investigate instances of excessive force and failing to hold officers who used excessive force accountable." *Id.* Third, Mr. Moran argues his *Monell* claim "is valid in that Chief Heav[e]y and Commissioner Tesei . . . had a custom and

policy of refusing to hold officer[s] responsible for using excessive force" which "resulted in excessive force being used against Robert Moran." *Id.*

The opposition wholly fails to mention any claim other than excessive force or *Monell* liability. *Id.* at 1–3. Additionally, Mr. Moran only makes excessive force arguments related to Officer Greco. *Id.* at 2. Based on this, Mr. Moran has abandoned Counts One, Three, Four, Six, Seven, Eight, Nine, Ten, and Eleven, and Mr. Moran has abandoned his excessive force claim against any Defendant other than Officer Greco. *See Badhai v. Conn. Hous. Fin. Auth.*, No. 3:18-CV-00060 (JCH), 2020 WL 6866677, at *12 (D. Conn. Oct. 19, 2020 (finding the plaintiff "abandoned her section 1981 and 1983 claims" because the plaintiff's "[o]pposition [was] bereft of any mention of these claims," despite addressing "each of her Title VII claims" (citations and quotation marks omitted)); *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006) (holding that "[b]ecause plaintiff's opposition papers did not address defendants' motion for summary judgment on [a] claim, [that] claim is deemed abandoned and summary judgment could be granted on that basis alone").

Accordingly, Defendants' motions for summary judgment will be granted as to Counts One, Three, Four, Six, Eight, Nine, Ten, and Eleven for all Defendants, as well as any remaining claims against Sergeant O'Donnell, Officer Tornga, Officer Sgaglio, Officer Escoffery, and Sergeant Petruso.

### 2. Excessive Force

Claims for use of excessive force by police officers in the course of an arrest or other seizure are considered under the reasonableness standard of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394–95 & n.10 (1989) (claim that police officer used excessive force against free citizen during an arrest was evaluated "under the Fourth Amendment and its

'reasonableness standard'" and not as a Fourteenth Amendment substantive due process claim);

*id.* at 398 ("[The] Eighth Amendment standard applies 'only after the State has complied with

the constitutional guarantees traditionally associated with criminal prosecutions.'" (quoting

*Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977))).

The Fourth Amendment prohibits the use of excessive force during arrests. *Id.* at 394–95.

Claims of excessive force under the Fourth Amendment are governed by the "objective

reasonableness" standard. *Id.* at 388. Application of this standard "requires a careful balancing of

the nature and quality of the intrusion on the individual's Fourth Amendment interests against

the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted).

The relevant evaluation must be made "from the perspective of a reasonable officer on the scene,

rather than with the 20/20 vision of hindsight" and with an awareness that "police officers are

often forced to make split-second judgments—in circumstances that are tense, uncertain, and

rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at

396–97.

It is an objective standard that "requires careful attention to the facts and circumstances

of each particular case, including the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

or attempting to evade arrest by flight." *Id.* at 396. "[I]n light of the fact-specific nature of the

inquiry on an excessive force claim . . . , granting summary judgment against a plaintiff on such

a claim is not appropriate unless no reasonable factfinder could conclude that the officers'

conduct was objectively unreasonable." *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir.

2015) (internal quotation marks and alteration omitted).

The Individual Defendants argue that Officer Greco's use of force was objectively reasonable because Mr. Moran was not cooperating in his arrest. Individual Defs.' Mot. for Summ. J. at 13. More specifically, the Individual Defendants emphasize that Mr. Moran "tucked his arms under his body preventing the officer's from gaining control of his arms to be handcuffed." *Id.* The Individual Defendants state that Officer Greco was holding Mr. Moran's left arm in place to allow other officers to attach handcuffs. *Id.* at 14. The Individual Defendants argue that once the officers had a handcuff attached to one of Mr. Moran's wrists but not the other, Mr. Moran had "a dangerous instrument that [could] be used as a deadly weapon" and therefore, "it is very important for the police officer who has control of the arm . . . maintain control . . . while there are other police officer's trying to get the opposite arm." *Id.* In the Individual Defendants' view, the video of the incident sows that Officer Greco was maintaining control over Mr. Moran's left wrist so that other officers could connect the handcuffs on Mr. Moran's right wrist to the set of handcuffs on Mr. Moran's left wrist. *Id.*

In response, Mr. Moran argues that "the video clips clearly show that P.O. Greco broke Mr. Moran's arm and acknowledged it on the video" and therefore, in Mr. Moran's view, Defendants' motions should be denied. Opp'n to Mots. for Summ. J. at 2.

The Court agrees, in part.

"The fact that a person . . . resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit." *Sullivan v. Gagnier*, 225 F.3d 161, 165–66 (2d Cir. 2000); *see also McKinney v. City of Middletown*, 712 F. App'x 97, 98 (2d Cir. 2018) ("Even where most of the facts concerning the application of force are undisputed, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the

officers' conduct was objectively unreasonable. An officer's use of force must be reasonable even when an arrestee or detainee is actively resisting." (citations, internal quotation marks, and alteration omitted)).

In the video of the incident, Officer Greco is holding Mr. Moran on the ground and attempting, with the assistance of other officers, to handcuff him. Subpart A of Ex. C to Individual Defs.' Mot. for Summ. J. at 00:36–00:49, ECF No. 215-6 ("Part A to Video Recording"). Officer Greco is holding Mr. Moran's left arm, trying to position Mr. Moran's arm and himself to facilitate handcuffing, and, at the 49 to 51 second mark, Officer Greco can be heard saying "we will break your fucking arms, you better cooperate." *Id.* at 00:49–00:51; *see also* Ex. L to Individual Defs.' Mot. for Summ. J. at 9, ECF No. 215-15 ("Heavey Decl. & Exs.") (attributing the "we're going to break your arm" statement to Officer Greco). Moments later, Mr. Moran's right arm has gone limp, he stops actively fighting the officers, and he can be heard sighing in pain. Part A to Video Recording at 00:54–01:14.

At this time, Mr. Moran was pinned to the ground by four officers, and he was resisting arrest by refusing to give the officers his arms, even after Mr. Moran's first wrist was handcuffed. Defs.' Statement of Facts ¶¶ 39–46.

The factual record provides competing explanations for Officer Greco's actions. First, during the deposition of Reginald Allard, Plaintiff's expert, Mr. Allard stated that Officer Greco "torqued" Mr. Moran's arm "up and that fractured the humerus bone on his left arm" when Officer Greco should have "br[ought] it down where the other arm could have been handcuffed to the first set of handcuffs." Allard Tr. at 85:1–5. Additionally, while Mr. Allard was asked about the reasonableness of each of the other officers' use of force in this incident, in portions of

the transcript provided to the Court Mr. Allard was not asked whether Officer Greco's use of force on Mr. Moran's arm was reasonable. *Id.* at 85:12–86:12.

Conversely, Officer Greco stated that he did not expect Mr. Moran's arm to break, and that he "wasn't trying to move [Mr. Moran's] arm, [he] was trying to move [his] body away from [Mr. Moran's] arm while maintaining the hold." Ex. N. to Individual Defs.' Mot. for Summ. J. at 154:8–15, 15522–156:3. Officer Greco stated that he "was surprised when [he] heard a pop." *Id.* at 154:15. Additionally, in an interview for the use of force investigation of this incident, Officer Greco stated that he made the statement about breaking Mr. Moran's arm because "he had been trying to warn [Mr.] Moran that if he continued to resist he might injure himself" and that Officer Greco "didn't want to harm [Mr.] Moran but was simply trying to control him." Heavey Decl. & Exs. at 13.

In these circumstances, the Court cannot determine as a matter of law whether Officer Greco's use of force was proportional to Mr. Moran's resistance and therefore, reasonable, or if Officer Greco's use of force was gratuitous and therefore, excessive. *See, e.g.*, *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 124 (2d Cir. 2004) (stating that excessive force liability may exist where an officer "gratuitously inflict[s] pain in a manner that [is] not a reasonable response to the circumstances"). Such a determination requires resolving competing accounts of what happened as well as a fact-intensive inquiry that includes assessment of a video taken by a civilian, and therefore, must be resolved by a jury. *See Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (citation omitted)).

Accordingly, Defendants' motions for summary judgment will be denied on these grounds.

### 3.    Qualified Immunity

"Qualified immunity protects federal and state officials from money damages and

unnecessary and burdensome discovery or trial proceedings." *Coollick v. Hughes*, 699 F.3d 211,

219 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Crawford-El v. Britton*, 523 U.S.

574, 598 (1998)); *see also Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) ("Qualified

immunity shields police officers acting in their official capacity from suits for damages unless

their actions violate clearly-established rights of which an objectively reasonable official would

have known." (internal quotation marks omitted)). It "is an affirmative defense that the

defendants have the burden of raising in their answer and establishing at trial or on a motion for

summary judgment." *Coollick*, 699 F.3d at 219.

"[P]olice officers acting in their official capacity" are not liable "for damages unless their

actions violate clearly-established rights of which an objectively reasonable official would have

known." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Jones v.

Parmley*, 465 F.3d 46, 553 (2d Cir. 2006) (ellipses omitted)). "When a defendant moves for

summary judgment based on qualified immunity, courts consider whether the facts shown make

out a violation of a constitutional right, and whether the right at issue was clearly established at

the time of [the] defendant's alleged misconduct." *Id.* (quotation marks and citations omitted).

"A right is clearly established if the contours of the right are sufficiently clear that a reasonable

official would understand that what he is doing violates that right." *Id.* at 739 (alterations,

quotation marks, and citations omitted). "Although we do not require a case directly on point to

hold that a defendant's conduct violated a clearly established right, existing precedent must have

placed the statutory or constitutional question beyond debate." *Id.* (quotation marks and citations

omitted).

The Individual Defendants argue "it was not clearly established that Individual Officers could not use the force they used in light of the circumstances confronting them." Individual Defs.' Mot. for Summ. J. at 10. Alternatively, the Individual Defendants argue that "even if it were so clearly established, it was objectively reasonable for an officer to believe that his use of force was objectively reasonable." *Id.* In the Individual Defendants' view, under these circumstances the individual officers are entitled to qualified immunity. *Id.* at 10–11.

In response, Mr. Moran argues that "the video clips clearly show that P.O. Greco broke Mr. Moran's arm and acknowledged it on the video" and therefore, in Mr. Moran's view, Defendants' motions should be denied. Opp'n to Mots. for Summ. J. at 2.

The Court agrees, in part.

For the reasons described in the previous section, the Court cannot determine whether "the facts show that the officer's conduct violated plaintiff's constitutional rights." *Zalaski v. City of Hartford*, 723 F.3d 382, 388–89 (2d Cir. 2013), and therefore, the Court focuses the qualified immunity inquiry on whether the conduct violated a clearly established right.

It is clearly established that "[o]fficers may not . . . gratuitously inflict pain in a manner that is not a reasonable response to the circumstances," *Diaz v. City of New York*, No. 00-CV-2944 (JMA), 2006 WL 3833164, at *18 (E.D.N.Y. Dec. 29, 2006) (quoting *Amnesty Am.*, 361 F.3d at 124); *see also Stokes v. City of New York*, No. 05-CV-0007 (JFB) (MDG), 2007 WL 1300983, at *10 (E.D.N.Y. May 3, 2007) (same); *Morse v. Fitzgerald*, No. 10-CV-6306 CJS, 2013 WL 1195036, at *9 (W.D.N.Y. Mar. 22, 2013) (same), and "[t]he fact that a person . . . resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit." *Sullivan*, 225 F.3d at 165–66.

Courts in this Circuit regularly find that intentional use of force that served no purpose would be considered excessive. *See Lozada v. Weilminster*, 92 F. Supp. 3d 76, 94 (E.D.N.Y. 2015) (collecting cases); *see also Sanders v. Garden City Police Dep't*, No. 09-CV-2393 (JFB) (SIL), 2015 WL 5518589, at *7 n.2 (E.D.N.Y. Sept. 16, 2015) (noting that an officer's use of force would be excessive if the conduct "serv[ed] no purpose other than to inflict discomfort and pain" as that was "not the hazy border between excessive and acceptable force" (citing *Ference v. Township of Hamilton*, 538 F. Supp. 2d 785, 812 (D.N.J. 2008))); *Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp. 2d 564, 586 (E.D.N.Y. 2013) (stating that even if the alleged injury is *de minimis*, an excessive force claim may still succeed "where the force used was excessive and gratuitous" or "intentional[] and unnecessar[y]").

Here, there are factual questions that must be resolved by the jury before the Court can determine whether Officer Greco's conduct was "excessive and gratuitous" and/or "intentional and unnecessar[y]." *Glowczenski*, 928 F. Supp. 2d at 586. Therefore, Officer Greco is not entitled to qualified immunity at this stage.

Accordingly, Defendants' motions for summary judgment will be denied on these grounds.[3]

### 4. *Monell* Liability

Under § 1983, municipalities are not vicariously liable in *respondeat superior* for the unconstitutional misconduct of their officials and employees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality is subject to liability "only if the deprivation of

---

[3] While Mr. Moran does not explicitly address Count Seven, the assault and battery claim, in his opposition to the motions for summary judgment, the Court will nonetheless allow this claim to go forward against Officer Greco because it is substantively identical to the excessive force claim. *See Outlaw v. City of Hartford*, No. 3:07-cv-01769, 2015 WL 13646918, at *1 (D. Conn. May 5, 2015) ("The essential elements of a Fourth Amendment excessive-force claim and a state-law assault-and-battery claim are substantially identical." (citing *Posr v. Doherty*, 944 F.2d 91, 95 (2d Cir. 1991))).

the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014).

This custom, policy, or usage need not be explicit. "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city "policy or custom" that is actionable under § 1983.'" *Amnesty Am.*, 361 F.3d at 126 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999) ("A municipality may be liable under § 1983 in cases of police brutality where the City's failure to supervise or discipline its officers amounts to a policy of deliberate indifference.").

To prove deliberate indifference, a plaintiff must show that there was an "obvious need" for better supervision to protect against constitutional violations and that the municipality ignored this need. *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (citing *City of Canton*, 489 U.S. at 390). A plaintiff can establish an obvious need through "proof of repeated complaints of civil rights violations," and, if the municipality makes "no meaningful attempt" to investigate these complaints or prevent further incidents, a court may infer a policy of deliberate indifference. *Id.*; *see also Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("The inference that a policy existed may, however, be drawn from circumstantial proof, such as . . . evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights." (citation omitted)).

The Town Defendants argue that Mr. Moran's *Monell* claim against the Town and Greenwich Police Department should be dismissed. *Id.* at 13–14. More specifically, the Town

Defendants contend that "there is no evidence of a formal policy or custom officially adopted by the Town that was unconstitutional on its face and proximately caused a violation of [Mr. Moran's] Fourth Amendment rights." *Id.* at 14. Moreover, the Greenwich Police Department had "a valid use of force policy which was constitutional on its face, with which all GPD officers were required to be familiar." *Id.* The Town Defendants emphasize that Mr. Moran has not cited to "any other instance prior to May 14, 2017, let alone a pattern or practice, in which municipal policy-making officials ignored and failed to investigate complaints of alleged use of unreasonable force." *Id.*

Next, the Town Defendants argue that Mr. Moran cannot establish *Monell* liability under a theory of inadequate training or supervision. *Id.* at 15. The Town Defendants argue that Mr. Moran "cannot present any evidence regarding the Town's training program, let alone identify a specific deficiency in it that caused his alleged injury." *Id.* at 16–17. The Town Defendants emphasize that "there is no dispute that, on the date in question, each of the defendant officers had received all state mandated training in searches, seizures, and the use of force." *Id.* at 17.

Finally, the Town Defendants argue that Mr. Moran cannot establish a *Monell* claim based on any failure to supervise or discipline because Mr. Moran "can offer no evidence that, at the time of the incident in question, the Town or Chief Heavey were on notice of a potentially serious problem of GPD officers using excessive force, that the need for corrective action was obvious, or that they failed to investigate or take action in circumstances suggesting deliberate indifference." *Id.* at 18. The Town Defendants emphasize that none of the defendant officers have been the subject of substantiated allegations of excessive force before the incident with Mr. Moran and the Town did not receive "repeated complaints of excessive force" that were not investigated. *Id.*

26

In response, Mr. Moran argues that Chief Heavey and Former First Selectman Tesei "engage[d] in a custom and practice of failing to investigate instances of excessive force and failing to hold officers who used excessive force accountable." Opp'n to Mot. for Summ. J. at 2. Mr. Moran also argues that Chief Heavey and Former First Selectman Tesei "were involved in the management and oversight of the GPD and investigations into use of force" and therefore, their "failure to hold officers accountable for excessive use of force resulted in excessive force being used against Robert Moran." *Id.* Mr. Moran contends that the "failure to train and supervise Sergeant O'Donnell and Police Officer Greco was obvious." *Id.*

The Court disagrees.

There is insufficient evidence in the record to find that the Town Defendants made "no meaningful attempt" to investigate complaints of excessive force or prevent further incidents. *Vann*, 72 F.3d at 1049.

While Mr. Moran argues that the Town Defendants "engage[d] in a custom and practice of failing to investigate instances of excessive force and failing to hold officers who used excessive force accountable," Opp'n to Mot. for Summ. J. at 2, he does not cite to, and the Court has not independently identified, any evidence in the record to support this claim. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998))).

Here, the only facts relevant to instances of excessive force include a record of prior use of force investigations in which the claims were all found to be justified and within policy. *See* Heavey Decl. & Exs. at 57–67. Notably, each of the incidents recorded were investigated to a conclusion. *Id.* (designating the final column of the chart "date completed"). Additionally, the

Greenwich Police Department Internal Affairs Logs indicate that there were no complaints of unreasonable force in the five-year period before May 14, 2017. *Id.* at 34–42. Finally, the Greenwich Police Department Civilian Complaint Log shows that there were no complaints of unreasonable force made against the officers involved in this incident in the five-year period before May 14, 2017. *Id.* at 44–55.

These records, therefore, cannot support the inference that the Town Defendants "fail[ed] to hold officers who used excessive force accountable," and there is no evidence of an "obvious need" for better supervision of these officers based on "proof of repeated complaints of civil rights violations" that were not investigated. *Vann*, 72 F.3d at 1049; *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.").

Finally, to the extent Mr. Moran is arguing a "failure to train" theory of liability, he has not provided any evidence to establish "that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference" or "a specific deficiency in the city's training program . . . that . . . is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Amnesty Am.*, 361 F. 3d at 129 (internal citation and quotation marks omitted). Here, there is no evidence to support the inference that the officers involved in this incident were inadequately trained. *See* Heavey Decl. & Exs. at 69–77 (use of force policy); *id.* at 3 (stating that, at the date of the incident, each of the Individual Defendants "had received all State of Connecticut required training and education on . . . use of force incident to arrest," had successfully completed the municipal police officer academy program or

state accepted equivalent," and "were in full compliance with the state mandated re-certification requirements," which required "forty (40) hours of training in job related subjects every three (3) years").

Instead, the only relevant evidence in the record shows that the officers received all relevant training and there is nothing to suggest such training was insufficient. *See City of Canton*, 489 U.S. at 391 ("And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.").

Therefore, Mr. Moran has not presented sufficient evidence to establish the *Monell* claim.[4]

Accordingly, Defendants motions for summary judgment will be granted as to this claim.

### B.  Motion to Strike

Defendants also move to strike the expert report Mr. Moran attached to the Complaint filed in 3:23-cv-00330 (VAB) ("*Moran II*") and the enhanced video and audio clips Mr. Moran relies on in his opposition to Defendants' motions for summary judgment because these materials were not produced during discovery. Defs.' Mem. of Law in Supp. of Mot. to Strike,

---

[4] While the Amended Complaint alleges municipal liability for Chief Heavey and Former First Selectman Tesei, Am. Compl. ¶¶ 106–116, such claims are duplicative of the claim against the Town, *see Phillips v. County of Orange*, 894 F. Supp. 2d 345, 384 n. 35 (S.D.N.Y. 2012) ("Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant."); *Olschafskie v. Town of Enfield*, No. 3:15-cv-00067 (MPS), 2015 WL 9239742, at *1 (D. Conn. Dec. 17, 2015) (determining that where a plaintiff brings "municipal liability claims against the Town under both federal and state law, the official capacity claims against the individual officers are redundant."). Therefore, Mr. Moran cannot sustain the municipal liability claims against Chief Heavey and First Selectman Tesei.

Similarly, the individual capacity claims against Chief Heavey and Former First Selectman Tesei will be dismissed because there is no evidence that these Defendants were personally involved. *See, e.g.*, *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." (citations and quotation marks omitted)).

ECF No. 229-1 ("Town Defs.' Mot. to Strike").[5] Defendants emphasize that the expert report is dated January 5, 2023, but was not produced to Defendants until Mr. Moran filed his opposition on March 11, 2023. *Id.* at 3–4. Defendants argue that district courts regularly preclude similar material from consideration at the summary judgment stage. *Id.* at 4–7 (citing *Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84 (2d Cir. 2008)). Defendants emphasize that Mr. Moran "lack[s] . . . a meaningful explanation for the late disclosure," which, in Defendants' view, "weighs heavily against the granting of a continuance, or further prolonging this litigation which has cluttered the docket for almost four years." *Id.* at 8.

To date, Mr. Moran has not responded to this motion.

After reviewing the expert report and enhanced video and audio clips, the Court's analysis of Officer Greco's conduct would not change, even if Mr. Moran had appropriately disclosed and included these materials in his opposition to Defendants' motions for summary judgment.

Accordingly, Defendants' motions to strike will be denied as moot.

### C. Motion to Consolidate

Consolidation under Rule 42(a) "should be prudently employed as 'a valuable and important tool of judicial administration.'" *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (internal citation omitted). "In assessing whether consolidation is appropriate in given circumstances, a district court should consider both equity and judicial economy," and ensure that "savings of expense and gains of efficiency can be accomplished without sacrifice of justice." *Id.* (internal citation and emphasis omitted).

---

[5] The Individual Defendants adopted the arguments made in the Town Defendants' motion to strike. Defs.' Mot. to Strike, ECF No. 232.

Mr. Moran argues this case should be consolidated with *Moran II* because the cases "involve similar parties, facts, and legal issues." Mot. to Consolidate at 1. In Mr. Moran's view, consolidation "will promote judicial economy and efficiency, avoid unnecessary duplication of efforts, and prevent inconsistent rulings" and "no party will be prejudiced by the consolidation." *Id.*

Defendants argue Mr. Moran's motion should be denied because *Moran II* "is subject to dismissal as legally insufficient for a variety of reasons, including the applicable statute of limitations and the prior pending action doctrine, and as an improper end run around the requirements of amending pleadings." Town Defs.' Obj. to Mot. to Consolidate at 1. In Defendants' view, "[j]ustice requires the denial of plaintiff's motion." *Id.* at 2. More specifically, Defendants contend that *Moran II* "includes the same defendants and claims relating to plaintiff's 2017 arrest" and therefore, the claims "are barred by the prior pending action doctrine" and "are . . . barred by the statute of limitations." *Id.* at 3–4.

The Court agrees.

*Moran II* covers the same basic set of facts, except that the *Moran II* Complaint includes facts related to Mr. Moran's criminal case that occurred after the Complaint in this case was filed. Compl. ¶¶ 67–70, *Moran v. Tesei*, 3:23-cv-00330 (VAB) (D. Conn. Mar. 11, 2023). *Moran II* also includes some, but not all, of the same Defendants and some, but not all of the same claims, as well as additional Defendants and claims. *Id.* ¶¶ 6–12, 71–125. Moreover, while the present case is at the summary judgment phase and closely approaching a trial date, Order, ECF No. 236, *Moran II* was just filed in March 2023 and Defendants filed motions to dismiss in May 2023, Mot. to Dismiss, *Moran II*, 3:23-cv-00330 (VAB) (D. Conn. May 8, 2023), ECF No. 21; Mot. to Dismiss, *Moran II*, 3:23-cv-00330 (VAB) (D. Conn. May 8, 2023), ECF No. 20.

Here, consolidation would cause delay and confusion over which claims remain, and against which Defendants. *See Smith v. Everson*, No. CV-06-0791 (SJF) (AKT), 2007 WL 2294320, at *3 (E.D.N.Y. Aug. 6, 2007) (denying motion to consolidate because "the risk of confusion would occur as a result of consolidation, rather than vice versa"). The Court therefore denies the motion to consolidate, and the Court will address the dismissal of any remaining duplicative claims in conjunction with the pending motions to dismiss in *Moran II. See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (finding that dismissing a duplicative lawsuit can foster judicial economy, promote unified, comprehensive litigation, and protect parties from litigating multiple suits over the same matters).

Accordingly, Mr. Moran's motion to consolidate will be denied.

## IV.   CONCLUSION

For the foregoing reasons, the Town Defendants' motion for summary judgment is **GRANTED.**

The Individual Defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part.**

The Individual Defendants' motion for summary judgment is granted as to all claims against Sergeant O'Donnell, Officer Tornga, Officer Sgaglio, Officer Escoffery, and Sergeant Petruso.

The Individual Defendants' motion for summary judgment is denied as to the excessive force claim (Count Two) and the assault and battery claim (Count Seven) against Officer Greco. The Individual Defendants' motion for summary judgment is granted as to all other claims against Officer Greco.

Defendants' motions to strike are **DENIED as moot**.

Mr. Moran's motion to consolidate this case with docket number 3:23-cv-00330 (VAB)

is **DENIED**.

       **SO ORDERED** at Bridgeport, Connecticut, this 19th day of May, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE
