# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ROBERT MORAN,
*Plaintiff,*

v.

No. 3:19-cv-722 (VAB)

TOWN OF GREENWICH, ET AL,
*Defendants.*

## RULING AND ORDER ON MOTION TO AMEND AND MOTION TO DISMISS

Robert Moran ("Plaintiff") has filed a motion to amend, with a proposed Amended Complaint alleging "fabrication of evidence, denial of fair trial, fair trial violations in withholding and creating false evidence" against the Town of Greenwich (the "Town"), Fred Camillo ("First Selectman Camillo"), Peter Tesei ("Former First Selectman Tesei"), James Heavey ("Police Chief Heavey"), Sean O'Donnell ("Sergeant O'Donnell"), Andrew Greco ("Officer Greco"), Brian Tornga ("Officer Tornga"), and Hayes Podmokly (formerly Sgaglio) ("Officer Podmokly")  (collectively, "Defendants") ("Count One"), excessive force and state law assault claims against Officer Greco ("Count Two"), municipal liability against the Town ("Count Three"), and fabrication of evidence against Chief Heavey, Officer Greco, Officer Podmokly, Sergeant O'Donnell, and Officer Tornga ("Count Four"). *See* Second Amended Consolidated Complaint, ECF No. 283 (Jul. 20, 2024) ("Second Amended Consolidated Complaint" or "SACC").

The Town, First Selectman Camillo, Former First Selectman Tesei, and Police Chief Heavey ("Town Defendants") have moved to dismiss all claims against them in the Amended Complaint for failure to state a claim. Mot. to Dismiss, ECF No. 286 (Aug. 9, 2024) ("Mot. to Dismiss").

For the following reasons, the motion for leave to amend is **GRANTED in part and DENIED in part**.

Leave to amend Count Two is **GRANTED**.[1]

Leave to amend Count One and Count Four is **GRANTED** for claims against Officer Greco, Officer Podmokly, Sergeant O'Donnell, and Officer Tornga in their individual capacities based on their alleged falsification of police reports and providing false testimony, and **DENIED** as futile for claims against First Selectman Camillo, Former First Selectman Tesei, and Police Chief Heavey in their individual capacities.

Leave to amend Count One, Count Three, and Count Four is **DENIED** as futile for claims against any Defendant based on withholding certain evidence, failing to properly investigate, or any other basis apart from the creation or offering of fabricated evidence to be used at Mr. Moran's criminal trial.

Leave to amend Count Three is **GRANTED** as to claims against the Town based on the alleged fabrication of evidence during Mr. Moran's trial and **DENIED** as to all other claims, including claims based on the alleged use of excessive force.

The Town Defendants' motion to dismiss is **DENIED as moot**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

The Court assumes the parties' familiarity with the factual and procedural background of this case and summarizes only the history that is relevant to these motions. *See* Ruling and Order on Mot. for Summ. J., Mot. to Strike, and Mot. to Consolidate, ECF No. 237 at 3–6 (May 19, 2023) ("Order re MSJ").

---

[1] The Court previously permitted Mr. Moran to proceed with his excessive force and state law assault claims against Officer Greco, *see* Order re MSJ at 19–24.

1. *Mr. Moran's Arrest and Criminal Prosecution*

On May 14, 2017, Mr. Moran alleges that Officer Greco broke his arm while handcuffing him during an arrest. SACC ¶¶ 1, 22, 24.

Mr. Moran also alleges that, after the arrest, Sergeant O'Donnell, Officer Greco, Officer Tornga, and Officer Podmokly (the "Individual Defendants"), who were present at the scene of his arrest, made false statements about his arrest in their police reports. *See id.* ¶¶ 14, 16, 17, 58.

Mr. Moran alleges that "[a]s a result of said false reports and statements, [he] was wrongfully charged with assault on a peace officer." *Id.* ¶ 67.

On February 21, 2018, Sergeant O'Donnell and Officer Podmokly allegedly provided false testimony at a hearing in Stamford Superior Criminal Court where they allegedly opposed Mr. Moran's admittance into Connecticut's accelerated rehabilitation program. *Id.* ¶ 67, 210.

Mr. Moran alleges that Police Chief Heavey "endorsed and approved misleading, false and incomplete statements and case incident reports," *id.* ¶ 18, and the Town Defendants "chose to ignore" certain information during the GPD's investigation of the use of force during his arrest and prosecution of his criminal case, and withheld certain information favorable to Mr. Moran. *Id.* ¶ 19–20, 47–48.

On May 29, 2019, Mr. Moran allegedly was admitted into the accelerated rehabilitation program. *Id.* ¶ 76.

On June 26, 2020, Mr. Moran allegedly received a "favorable" disposition in his criminal case, and his case was sealed. *Id.* ¶ 76.

2. *Other Alleged Incidents of Fabricating Evidence*

Mr. Moran claims that on two other occasions, GPD officers allegedly fabricated evidence that was used to support criminal charges.

First, in 2008, certain GPD officers allegedly tased a Hispanic youth "approximately three times" while he and other students participated in "senior prank day." *Id*. ¶ 71. Mr. Moran alleges that "[t]he information supplied in the case incident reports did not correspond to what was captured on the videotape[,]" and "[t]he young man was charged and despite the conflicting evidence, [and] was successfully prosecuted." *Id*. ¶ 72.

Second, on or around "Christmas Day in 2014," Officer Greco allegedly tased and handcuffed a Black teenager, who was later charged with "Disorderly Conduct. . ., Criminal Mischief . . ., and interfering with an Officer . . . for trying to leave his mother's residence on Christmas morning so that he could meet his father." *Id*. ¶ 68 – 69. Police Chief Heavey allegedly was present when the alleged incident occurred. *Id*. ¶ 68. Mr. Moran alleges that certain officers wrote case incident reports that "contained fabricated conflicting information regarding who called the police and what the purpose of them being at the home was and whether they should have been in the home at all." *Id*. ¶ 70. Mr. Moran alleges that Police Chief Heavey "did not provide a statement." *Id*.

### B.  Procedural Background

On May 14, 2019, Mr. Moran filed his initial Complaint. Compl., ECF No. 1.

On November 15, 2019, Mr. Moran filed an Amended Complaint alleging claims against the Defendants[2] and the Greenwich Police Department. Am. Compl., ECF No. 24.

On May 19, 2023, the Court granted summary judgment for the Defendants as to all of Plaintiff's claims, except for Plaintiff's excessive force and assault and battery claims against Officer Greco. *See* Order re MSJ. In granting summary judgment as to Plaintiff's claims raising an issue under *Monell v. v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the

---

[2] Mr. Moran's First Amended Complaint did not bring claims against First Selectman Camillo.

Court found there to be "insufficient evidence in the record to find that the Town Defendants made 'no meaningful attempt' to investigate complaints of excessive force or prevent further incidents." Order re MSJ at 27 (citing *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)). The Court further found "no evidence to support the inference that the officers involved in this incident were inadequately trained" that would support a "failure to train" theory of liability. *Id.* at 28.

In the same order, the Court denied Mr. Moran's motion to consolidate this case with *Moran v. Tesei*, 3:23-cv-00330 (VAB) (D. Conn. 2023) ("*Moran II*") given that "present case [was] at the summary judgment phase and closely approaching a trial date," and "consolidation would cause delay and confusion over which claims remain, and against which Defendants." *Id.* at 31–32.

On May 30, 2023, Mr. Moran filed a motion for reconsideration. Mot. for Reconsideration, ECF No. 240.

On May 31, 2023, the Court denied Mr. Moran's motion for reconsideration. Order, ECF No. 241.

On June 15, 2023, Officer Greco filed an interlocutory appeal of the Court's summary judgment order on the issue of qualified immunity. Notice of Interlocutory Appeal, ECF No. 248.

On June 19, 2023, Mr. Moran filed an interlocutory appeal of the Court's summary judgment order. Notice of Interlocutory Appeal, ECF No. 250.

On June 21, 2023, the Court stayed the case pending Officer Greco's interlocutory appeal. Order, ECF No. 252.

On December 6, 2023, Mr. Moran withdrew his appeal. Mandate of U.S. Court of Appeals, ECF No. 257.

On March 28, 2024, the Court granted Mr. Moran leave to amend his municipal liability claim and dismissed all other claims in *Moran II*, and consolidated *Moran II* with this case. *See* Order *Moran v. Tesei*, 3:23-cv-00330 (VAB), ECF No. 34. ("Order re MTD"). In its order, the Court found that amendment of Mr. Moran's malicious prosecution and fair trial claims would be futile because Mr. Moran "cannot establish a favorable termination, as the charges against him were dismissed following his participation in Connecticut's accelerated rehabilitation program." Order re MTD at 13 (citing *Murphy v. Kearney*, No. 3-08-CV-1486 14 (JCH), 2010 WL 2640041, at *4 (D. Conn. June 28, 2010) ("[C]ourts have consistently held that participation in Connecticut's accelerated rehabilitation program cannot be regarded as a termination that is favorable to the criminal defendant.")).

The Court likewise found that amendment of his Brady claim would be futile because there was no adjudication of guilt in this case, and that his abuse of process claim was time-barred. *Id*. at 14–15. Because "it [was] not clear from the facts alleged in the proposed Amended Complaint when Mr. Moran knew or should have known of the Town's alleged policy or custom of using manufactured and fabricated evidence in the ordinary course of business," this claim was not time-barred, at least at that time, and the Court allowed Mr. Moran to amend his Complaint to include municipal liability claims only insofar as those claims related to the Town's conduct during his criminal case. *See id.* at 15 – 16 ("To the extent that Mr. Moran's municipal liability claim directly relates to the occurrences of his May 14, 2017, arrest, those claims were litigated in *Moran I* and are dismissed from this case. To the extent that Mr.

Moran's municipal liability claim relates to the Town's conduct during Mr. Moran's criminal case, that is all that remains in this case.").

On May 1, 2024, Mr. Moran moved for reconsideration of the Court's Order in *Moran II* dismissing his fair trial claims, and argued that the Second Circuit has held that a favorable termination of innocence is not required to establish a fabrication of evidence claim. Mot. for Reconsideration, ECF No. 263 (citing *Smalls v. Collins*, 10 F.4th 117 (2d Cir. 2021)).

On May 4, 2024, Mr. Moran filed his Amended Consolidated Complaint. Am. Consolidated Compl., ECF No. 264 ("First Amended Consolidated Complaint").

On May 7, 2024, the Second Circuit dismissed Officer Greco's appeal for lack of appellate jurisdiction. Mandate of USCA, ECF No. 265.

On May 13, 2024, Officer Greco, Sergeant O'Donnell, Officer Tornga, and Officer Podmokly (the "Individual Defendants") filed an opposition to Mr. Moran's motion for reconsideration, and moved to dismiss the First Amended Consolidated Complaint. Objection, ECF No. 266; Mot. to Dismiss, ECF No. 267.

On May 14, 2024, the Town Defendants joined the Individual Defendants' Objection. Mot. to Join re Objection, ECF No. 269.

On May 20, 2024, Mr. Moran filed a reply in support of his motion for reconsideration. Reply, ECF No. 271.

On June 17, 2024, the Town Defendants likewise moved to dismiss the First Amended Consolidated Complaint. Mot. to Dismiss, ECF No. 276

On June 27, 2024, Mr. Moran filed an Amended Complaint. ECF No. 277.

On June 28, 2024, Mr. Moran filed an opposition to the Town Defendants' motion to dismiss. Mem. in Opp'n, ECF No. 278.

On that same day, the Court granted Mr. Moran's motion for reconsideration, and found that its prior Order "wrongly conflated Mr. Moran's malicious prosecution claim with his separate and distinct fair trial claim," and that, "[a]s Mr. Moran has rightly stated, the Second Circuit has distinguished these two claims, such that the former claim, one of malicious prosecution flows from exoneration, and the latter one, the fair trial claim, does not." Order re Mot. for Reconsideration, ECF No. 279 at 4 (Jun. 28, 2024) ("Order re Mot. for Reconsideration") (citing *Small*, 10 F.4th at 132 ("In contrast to malicious prosecution claims, which require a plaintiff to demonstrate that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence, we have long held that Section 1983 liability attaches for knowingly falsifying evidence even where there simultaneously exists a lawful basis for [the] deprivation of liberty that the plaintiff suffered." (citations and internal quotation marks omitted)). The Court vacated its prior Order in Moran II as to Mr. Moran's fair trial claim based on fabrication of evidence, and permitted leave to amend this claim. *Id.* at 5.

On July 5, 2024, the Town Defendants moved for clarification regarding the operative Complaint. Mot. for Clarification, ECF No. 280.

On July 8, 2024, the Court clarified that "the Court has granted leave for Plaintiff to amend and file a consolidated Complaint as to his municipal liability claim only for conduct during his criminal case, and to add a fair trial claim based on the alleged fabrication of evidence" and directed Plaintiff to file a second Amended Consolidated Complaint. Order, ECF No. 281. The Court also denied as moot the pending motion to dismiss the First Amended Consolidated Complaint. *Id.*

On July 19, 2024, Mr. Moran filed the motion to amend, Mot. to Amend, ECF No. 282 ("Mot. to Amend"), and on July 20, 2024, he filed a proposed Amended Consolidated Complaint, SACC.

On August 1, 2024, the Individual Defendants filed an Answer to the Second Amended Consolidated Complaint. Answer, ECF No. 285.

On August 9, 2024, the Town Defendants filed a motion to dismiss the Second Amended Consolidated Complaint, Mot. to Dismiss, ECF No. 286 ("Mot. to Dismiss"), and objection to the motion to amend, Obj. re Mot. to Amend, ECF No. 287 ("Def. Obj.").

On December 13, 2024, Mr. Moran filed a joint reply as to his motion to amend and opposition to the motion to dismiss. Mem. in Opp'n re Mot. to Amend, Mot. to Dismiss, ECF No. 322 ("Pl. Opp'n"); *see also* Exhibit re Mem. in Opp'n, ECF No. 323; Sealed Exhibit 4, ECF No. 324; Sealed Exhibit 20, ECF No. 325.

On December 18, 2024, the Town Defendants filed a reply brief in support of their motion to dismiss. Reply, ECF No. 326 ("Def. Reply").

## II.    STANDARD OF REVIEW

### A.  Motion to Amend

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The district court has broad discretion to decide a motion to amend. *See Local 802,*

*Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998). If a

court chooses to deny leave to amend, however, it must give some "justifying reason" for doing

so. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include

"undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, [or] futility of amendment[.]" *Id.*; *see also Lucente v. Int'l Bus.*

*Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when

amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not

withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"); *Park B. Smith, Inc. v. CHF*

*Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of

bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer

the period of an unexplained delay, the less will be required of the nonmoving party in terms of a

showing of prejudice." (internal quotation marks omitted)). A court will "only deny a motion to

amend if it is clear on the face of the pleadings that the claims would be barred by the statute of

limitations, and if the issue would not need to be more fully briefed." *Hybrid Athletics, LLC v.*

*Hylete, LLC*, No. 3:17-CV-1767 (VAB), 2018 WL 4323816, at *4 (D. Conn. Sept. 10, 2018).

## B.  Motion to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon

which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a

complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo

working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs.*,

*Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

In his Second Amended Consolidated Complaint, Mr. Moran alleges (1) fair trial claims in Count One and Count Four, (2) excessive force and state law assault against Officer Greco in Count Two, and (3) municipal liability in Count Three.

In their motion to dismiss, the Town Defendants argue that Mr. Moran's Second Amended Consolidated Complaint should be dismissed because it is untimely and fails to comply with Rule 8. Mot. to Dismiss at 5–7. As to the merits of Mr. Moran's Second Amended Consolidated Complaint, the Town Defendants argue that his *Monell* claims should be dismissed because his allegations relate to the occurrences of his May 14, 2017 arrest, rather than his criminal case, and any allegations related to his criminal case fail to allege that the Town had a policy or custom of using fabricated evidence. *Id.* at 8–15. The Town Defendants further argue that any fair trial claim pursued against them in their individual capacities likewise fails because Mr. Moran does not allege personal involvement of the Town Defendants. *Id.* at 15–22

The Court will address each argument in turn.

### A.  Timeliness and Compliance with Rule 8

The Town Defendants argue that Mr. Moran's Second Amended Consolidated Complaint is untimely, as he filed the complaint on July 20, 2024 despite the Court's July 8, 2024 Order requiring Mr. Moran to submit the Complaint no later than July 19, 2024. Mot. to Dismiss at 6–7. They further argue that the Complaint should be dismissed for failure to comply with Rule 8, because the Second Amended Consolidated Complaint "consists of 253 allegations, 60 pages, and numerous hyperlinks to transcripts, video clips, reports, blogs, and other material" and the

"factual allegations and legal assertions are so disjointed and convoluted as to render the pleading virtually incomprehensible[.]" *Id.* at 7.

The Court declines to deny leave to amend on either basis.

First, the Court's July 8, 2024 Order "directed [Mr. Moran] to file a Second Amended Consolidated Complaint, including only the claims permitted in the March 28, 2024 and June 28, 2024 Orders by July 19, 2024." Order, ECF No. 281. It also indicated, however that, "[t]o the extent that Plaintiff seeks to file claims beyond the scope of either of those Orders (from March 28, 2024 and June 28, 2024) in the Second Amended Consolidated Complaint, Plaintiff shall move for leave to do so in the filing due by July 19, 2024." *Id.* On July 19, 2024, Mr. Moran timely filed a motion for leave to amend and indicated that he sought leave to include additional claims beyond the scope of the Court's prior Orders. Mot. to Amend. He then filed his Amended Complaint the next day. SACC. Moreover, even if Mr. Moran's Second Amended Consolidated Complaint were filed a day late, this minimal delay is not sufficient to establish a lack of diligence. *See Stein v. Needle*, No.3:19-CV-01634 (VLB), 2020 WL 4043047, at *2 (D. Conn. July 17, 2020) (finding that good cause exists to excuse the plaintiffs' delay in filing a motion to amend and noting that "[a] three-day delay is not sufficient to show lack of diligence").

Second, dismissal of a complaint for failure to comply with Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). The Second Amended Consolidated Complaint provides fair notice of Mr. Moran's claim and the facts supporting his entitlement to relief, and thus Mr. Moran has complied with Rule 8. *See* Fed R. Civ. P. 8(a)(2)("A pleading that states a claim for relief must

contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief").[3]

Accordingly, the Court denies leave to amend on this basis.

### B.  The Fabrication of Evidence Claims

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). "[T]o establish a section 1983 fair-trial claim based on fabrication of evidence, a plaintiff must demonstrate that 'an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result.'" *Smalls*, 10 F.4th at 132 (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)). "[T]o succeed on a claim for a denial of the right to a fair trial against a police officer based on an allegation that the officer falsified information, an arrestee must [therefore] prove by a preponderance of the evidence that the officer created false information, the officer forwarded the false information to prosecutors, and the false information was likely to influence a jury's decision." *Id.* (quoting *Garnett*, 838 F.3d at 279–80) (alterations in original).

In Counts One and Four, Mr. Moran alleges that the Defendants fabricated evidence used by the prosecution at his criminal trial through (1) failing to disclose certain exculpatory

---

[3] In addition, while the Town Defendants note that Mr. Moran failed to provide a redlined version of his Proposed Amended Consolidated Complaint as required by Local Rule of Civil Procedure 7(f), *see* Def. Obj., ECF No. 287 at 4, the Court declines to deny leave to amend on that basis. *See Capsalors v. Prudential Ins. Co.*, No. 3:20-CV-00699 (SVN), 2022 WL 959747, at *3 (D. Conn. Mar. 30, 2022) (while Plaintiff failed to comply with Local Rule of Civil Procedure 7(f), concluding "the Court is not required to deny the motion on this ground and, instead, will address the merits of the request below."); *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (The Court has "inherent authority to manage [its] docket[]... with a view toward the efficient and expedient resolution of cases.").

evidence, (2) failing to properly investigate or consider certain evidence, and (3) false statements that the Individual Defendants allegedly made in incident reports or while testifying. *See, e.g.,* SACC ¶¶ 14, 16–17, 47–50, 58, 59, 210.

To the extent that Mr. Moran seeks to bring a fabrication of evidence claim against any Defendant based on an allegedly incomplete investigation or failing to disclose certain evidence, *see, e.g.,* SACC ¶ 53 ("Chief Heavy, Deputy Chief Robert Berry, Deputy Chief Marino and Lt. Mark Zucarella conducted investigations and reviews that they knew or should have known were intentionally incomplete"), this conduct would not give rise to a fabrication of evidence claim. Failing to adequately investigate or provide exculpatory evidence is legally distinct from fabricating or falsifying evidence. *See Amory v. Katz*, No. 3:15-CV-01535 (VAB), 2016 WL 7377091, at *9 (D. Conn. Dec. 19, 2016) ("Mr. Amory has failed to state a claim for fabrication of evidence, as his factual allegations regarding the evidence used in the criminal case against him do not actually include any specific claims of fabrication. Rather than accusing Detective DeLouis and Detective Mullin of creating false evidence against him, Mr. Amory accuses them of omitting potentially helpful information; namely, interviews with important witnesses and potentially exculpatory video evidence."); *see also Harasz v. Katz*, 239 F. Supp. 3d 461, 495 (D. Conn. 2017) ("Plaintiffs are upset by Trantalis's perceived lack of zeal in pursuing investigative leads, but their complaint is really that Trantalis failed to discover real evidence, not that he fabricated false evidence.").

In addition, to the extent that Mr. Moran asserts claims for violations of his right to a fair trial other than a fabrication of evidence claim, such as a claim under *Brady v. Maryland*, 373 U.S. 83 (1963) or a claim for malicious prosecution, as discussed in the Court's prior Order, amendment to include these claims would be futile because the charges against him were

15

dismissed following his participation in Connecticut's accelerated rehabilitation program. *See* Order re MTD at 13–14 ("Mr. Moran cannot establish a favorable termination, as the charges against him were dismissed following his participation in Connecticut's accelerated rehabilitation program. . . . And because the charges against Mr. Moran were dismissed following his participation in accelerated rehabilitation, . . . , there was no adjudication of guilt in this case," to form the basis of a *Brady* claim. (citing *Murphy v. Kearney*, No. 3-08-CV-1486 (JCH), 2010 WL 2640041, at *4 (D. Conn. June 28, 2010) ("[C]ourts have consistently held that participation in Connecticut's accelerated rehabilitation program cannot be regarded as a termination that is favorable to the criminal defendant."); *and Reich v. City of New York*, No. 19-CV-6491 (EK) (RER), 2021 WL 11628271, at *6 (E.D.N.Y. July 23, 2021), *report and recommendation adopted*, No. 19-CV-6491 (EK) (RER), 2021 WL 5783382 (E.D.N.Y. Dec. 7, 2021) (collecting cases) ("[U]ndisclosed evidence can only serve as the basis for a Brady claim if there has been an adjudication of guilt." (citing *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995)))); *see also* Order re Motion for Reconsideration, ECF No. 279 (vacating and granting motion to amend as to fabrication of evidence claim only).

Mr. Moran has alleged fabrication of evidence claims against the individual Defendants in their individual and official capacities, and against Police Chief Heavey, First Selectman Camillo and Former First Selectman Tesei on a supervisory liability theory.

The Court will first address Mr. Moran's claims against the Individual Defendants, and then his supervisory liability claims.

### 1. The Individual Defendants

The Individual Defendants have not filed a motion to dismiss Mr. Moran's claims.

Mr. Moran has plausibly asserted fabrication of evidence claims against the individual

Defendants based on their allegedly false testimony and reports. *See Smalls* 10 F.4th at 132

("[T]o establish a section 1983 fair-trial claim based on fabrication of evidence, a plaintiff must

demonstrate that 'an (1) investigating official (2) fabricate[d] information (3) that is likely to

influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff

suffer[ed] a deprivation of life, liberty, or property as a result.'"). Mr. Moran alleges that the

individual Defendants falsely claimed that he assaulted police officers during his arrest and that

these statements were forwarded to prosecutors and used as a basis for criminal charges against

him for assault on a peace officer. *See* SACC ¶ 14 (alleging "Police Officer Greco made false

statements in his written police reports" and specifying statements that were allegedly false); *id.*

¶ 16 ("The false statements made by GPD P.O. Scaglio [sic] after the arrest include [specifying

statements]"); *id.* ¶ 17 ("false statements by then P.O. (now Sergeant) Brian Tornga include

[specifying statements]"); *id.* ¶ 210 ("Defendants Sergeant O'Donnell and Hayes Scaglio

[sic]/Podmokly appeared at the Stamford Superior Criminal Court on February 21, 2018 and

provided testimony in opposition to Plaintiff receiving admittance into a supervised diversionary

program. The testimony that Plaintiff assaulted them was false."); *id.* ¶¶ 205–208[4] (alleging that

the false allegations were forwarded to prosecutors and used as a basis for his prosecution); *see*

*also Barnes v. City of New York*, 68 F.4th 123, 129 (2d Cir. 2023) ("Barnes met his pleading

obligation to present more than conclusory allegations that the officers fabricated the drug sale

account. He alleged that he was talking to a friend when the Defendant Officers arrested him;

that the Defendant Officers knowingly lied to the prosecutor in relaying that they witnessed

---

[4] The paragraphs in the Proposed Amended Consolidated Complaint are mislabeled, and paragraph "206" is labeled "194." The Court refers to the paragraphs as labeled in the Second Amended Consolidated Complaint, and the relevant portion cited here includes the paragraphs labeled "205," "206," "194," "207," and "208."

Barnes sell drugs; that a prosecution was commenced based on fabricated evidence; that fabricated evidence was adduced at trial; and that Barnes was ultimately acquitted of the drug sale charge.").

While Mr. Moran asserts claims against the Individual Defendants in both their individual capacities and their official capacities, "a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005). As a result, any claims brought against the Individual Defendants in their official capacities are duplicative of Mr. Moran's fabrication of evidence claim against the Town, which the Court will address below. *See Accarino v. Town of Monroe*, No. 21-34, 2021 WL 3745770 (2d Cir. Aug. 25, 2021) (dismissing claims brought against an individual defendant in his official capacity where plaintiff failed to plead a claim against the municipality) (summary order).

Accordingly, leave to amend to include fabrication of evidence claims against the Individual Defendants is granted only to claims in their individual capacities based on their alleged falsification of police reports and providing false testimony, and denied as to other claims based on withholding certain evidence, failing to properly investigate, or any other basis unrelated to creating or offering false evidence to be used at Mr. Moran's criminal trial.[5]

---

[5] In the Second Amended Consolidated Complaint, Mr. Moran "claims damage for the fabricated narrative provided to Hearst media and other media outlets in an attempt to shape the narrative and reduce their liability." SACC ¶ 50. As discussed above, however, a fair trial claim based on fabrication of evidence considers evidence investigators fabricated that was "forward[ed] . . . to prosecutors," "likely to influence a jury's verdict," and that caused the Plaintiff to "suffer[] a deprivation of life, liberty, or property." *Garnett*, 838 F.3d at 279. While the Court need not decide on issues involving damages at this early stage of litigation, any fair trial claim that Mr. Moran may bring must be confined to evidence forwarded to prosecutors that was likely to influence a jury verdict in his criminal case, not information provided only to media outlets. *Ricciuti*, 124 F.3d at 130 ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial")

## 2. Supervisory Liability

"In this Circuit[,] personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [§] 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). As other courts have noted, "until recently, plaintiffs could establish the liability of a supervisory official for a subordinate's conduct under § 1983 by showing" one of five enumerated factors.[6] *Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863 (KMK), 2021 WL 1164185, at *31 (S.D.N.Y. Mar. 26, 2021). "In *Iqbal*, [however,] the Supreme Court stated that in § 1983 suits against state officials, such officials 'may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.'" *Id.* (citing *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676)).

In *Tangreti*, the Second Circuit "joined [several other] circuits in holding that after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). "A supervisor's 'mere knowledge' of a subordinate's unconstitutional behavior is insufficient 'because that knowledge does not amount to the supervisor's violating the Constitution.'" *Taylor v. City of New York*, No. 19 CIV. 6754 (KPF), 2022 WL 744037, at *11 (S.D.N.Y. Mar. 11, 2022)

---

[6] Namely, that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995))

(quoting *Tangreti*, 983 F.3d at 616-17); *see also Dinh v. Doe*, No. 3:24-CV-1042 (OAW), 2024 WL 3343006, at *2 (D. Conn. July 9, 2024) ("Mere awareness of an issue is no longer sufficient to state a claim for supervisory liability."). "The violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618.

The Town Defendants argue that Mr. Moran's fabrication of evidence claim against Police Chief Heavey fails because "[t]here is no allegation that Chief Heavey himself fabricated evidence or was directly involved in the fabrication of evidence, and further no allegation that Chief Heavey forwarded any alleged false information to prosecutors." Mot. to Dismiss at 20. The Town Defendants further argue that to the extent that Mr. Moran asserts claims against First Selectman Camillo or Former First Selectman Tesei in their individual capacities, these claims likewise fail for lack of personal involvement.

In response, Mr. Moran argues that Police Chief Heavey is liable under a supervisory liability theory, and cites to a Connecticut Superior Court Complaint from 2011 that asserted claims against Police Chief Heavey on a supervisory liability theory. Pl. Opp'n at 6–7; *see also id.* at 8–9 (discussing *Crosdale v. Town of Greenwich*, No. FSTCV106004811S (Conn. Super. Ct. May 31, 2011)). Mr. Moran further argues that Police Chief Heavey, First Selectman Camillo and Former First Selectman Tesei "were deliberately indifferent to the fabrication of evidence occurring at the GPD." *Id.* at 9.

The Court disagrees.

To bring a claim against Police Chief Heavey, First Selectman Camillo and Former First Selectman Tesei, Mr. Moran must do more than plead that they were aware of the fabrication of evidence, *see Dinh*, 2024 WL 3343006, at *2 ("Mere awareness of an issue is no longer sufficient to state a claim for supervisory liability."), and "must plead and prove that . . . [each of

them], through [their] own individual actions, has violated the Constitution" by fabricating evidence used in his criminal prosecution. *Tangreti*, 983 F.3d at 618.

Mr. Moran has not alleged that Police Chief Heavey, First Selectman Camillo and Former First Selectman Tesei fabricated evidence or forwarded that evidence to prosecutors. Mr. Moran argues that the Town Defendants were "deliberately indifferent to the fabrication of evidence." Pl. Opp'n at 9. Deliberate indifference, however, is not an element of a fair trial claim based on the alleged fabrication of evidence.[7] *See Smalls* 10 F.4th at 132 ("[T]o establish a section 1983 fair-trial claim based on fabrication of evidence, a plaintiff must demonstrate that 'an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result.'"); *Tangreti*, 983 F.3d at 618 ("'The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary." (quoting *Iqbal*, 556 U.S. at 676)).

In addition, while Mr. Moran makes the conclusory statement that Police Chief Heavey "fabricated and signed off o[n] fabricated evidence," SACC ¶ 249, the Second Amended Consolidated Complaint does not contain any allegations that Police Chief Heavey himself fabricated evidence. Instead, it alleges that Police Chief Heavy had a "policy of . . . rubber stamping fabricated reports," *id.* ¶ 221, and "endorsed" statements that were "false," *id.* ¶ 18.

---

[7] Moreover, to the extent Mr. Moran argues that the Police Chief Heavey, First Selectman Camillo and Former First Selectman Tesei demonstrated "deliberate indifference to the rights of others by [their] failure to act on information indicating unconstitutional acts were occurring or for [their] gross negligence in failing to supervise [their] subordinates," Mr. Moran has failed to allege that they were on notice that the Individual Defendants were prone to fabricate evidence, nor has he "show[n] an affirmative causal link between the supervisor[s'] inaction and [his] injury." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002); *see also id.* at 141 ("[P]recedent clearly establishes that for a supervisor to be liable under section 1983 for his failure to inquire, he must first have been on notice that his subordinate was prone to commit some unconstitutional or unacceptable behavior.").

Although Mr. Moran alleges that "Chief Heavey made. . . misleading, false and incomplete statements and case incident reports," these allegedly false statements were, by Mr. Moran's own admission, "Captain Robert Berry's conclusions" rather than statements allegedly fabricated by Police Chief Heavey. *Id.* ¶ 18 ("Chief Heavey made, endorsed and approved misleading, false and incomplete statements and case incident reports including but not limited to Captain Robert Berry's conclusions that [specifying conclusions]"). In sum, there are no allegations in the Complaint suggesting that Police Chief Heavey, First Selectman Camillo, or Former First Selectman Tesei fabricated evidence.[8]

Accordingly, the Court denies leave to amend to include fabrication of evidence claims against Police Chief Heavey, First Selectman Camillo or Former First Selectman Tesei in their individual capacities because such claims would be futile. *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) ("[A] motion for leave to amend a complaint may be denied when amendment would be futile." (citing Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003)).

The Court will consider whether there is any basis for municipal liability attributable that would arise from the allegedly false testimony and reports that Mr. Moran claims the individual Defendants provided in the following section.

### C.  The Municipal Liability Claims

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory," *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Instead, a municipality is subject to liability "only if the deprivation of the plaintiff's rights under federal

---

[8] In his brief, Mr. Moran argues that the "fabricated case incident reports [] were done at the direction of command staff[.]" Pl. Opp'n at 3–4. While the Second Amended Consolidated Complaint alleges that "the Town, through the Police Chief and Commissioners, knew [the allegedly fabricated statements] to be false," SACC ¶ 205, it does not allege that any of the Town Defendants instructed the Individual Defendants to fabricate evidence or testimony.

law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014).

This custom, policy, or usage need not be explicit. "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city "policy or custom" that is actionable under § 1983.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999) ("A municipality may be liable under § 1983 in cases of police brutality where the City's failure to supervise or discipline its officers amounts to a policy of deliberate indifference.").

To prove deliberate indifference, a § 1983 plaintiff must show that there was an "obvious need" for better supervision to protect against constitutional violations and that the municipality ignored this need. *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (citing *City of Canton*, 489 U.S. at 390). A plaintiff can establish an obvious need through "proof of repeated complaints of civil rights violations," and, if the municipality makes "no meaningful attempt" to investigate these complaints or prevent further incidents, a court may infer a policy of deliberate indifference. *Id.*; *see also Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("The inference that a policy existed may, however, be drawn from circumstantial proof, such as ... evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights." (citation omitted)).

### 1.   The Municipal Liability Claims Based on Use of Excessive Force

The Town Defendants first argue that Mr. Moran's *Monell* claim should be dismissed because although the Court granted leave for Mr. Moran to amend his municipal claim only as to it related to allegations of fabrication of evidence at his criminal trial, Mr. Moran's Second Amended Consolidated Complaint includes allegations relevant only to his excessive force claim. Mot. to Dismiss at 8–9.

Mr. Moran alleges that "the Monell fabrication of evidence claims are inextricably linked to the deliberate indifference claims" relating to "[f]ailing to investigate citizen complaint[s]" about excessive force and "to supervise [and] train" officers to prevent the use of excessive force. Mot. to Amend, ECF No. 282 at 1.

The Court disagrees.

In ruling on the Defendants' summary judgment motion, the Court considered Mr. Moran's arguments "that Chief Heavey and Former First Selectman Tesei 'engage[d] in a custom and practice of failing to investigate instances of excessive force and failing to hold officers who used excessive force accountable'" and that their "failure to hold officers accountable for excessive use of force resulted in excessive force being used against Robert Moran." Order re MSJ at 27 (quoting Mem. of Law in Opp'n to Defs.' Mots. for Summ. J., ECF No. 219) (alteration in original). The Court concluded that Mr. Moran "has not presented sufficient evidence to establish the *Monell* claim" based on allegations of deliberate indifference to the use of excessive force and dismissed this claim. *Id.* at 29.

The Court likewise dismissed municipal liability claims against Chief Heavy and Former First Selectmen Tesei because these claims were "duplicative of the claim against the Town," and because "there is no evidence that these Defendants were personally involved." *See id.* at 29

n.4 (citing *Phillips v. County of Orange*, 894 F. Supp. 2d 345, 384 n.35 (S.D.N.Y. 2012)

("Within the Second Circuit, where a plaintiff names both the municipal entity and an official in

his or her official capacity, district courts have consistently dismissed the official capacity claims

as redundant."); *Olschafskie v. Town of Enfield*, No. 3:15-cv-00067 (MPS), 2015 WL 9239742,

at *1 (D. Conn. Dec. 17, 2015) (determining that where a plaintiff brings "municipal liability

claims against the Town under both federal and state law, the official capacity claims against the

individual officers are redundant."); *and Tangreti*, 983 F.3d at 618 ("[T]here is no special rule

for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official

defendant, through the official's own individual actions, has violated the Constitution." (citations

and quotation marks omitted))).

As a result, in *Moran II*, the Court determined that Mr. Moran was barred from asserting

*Monell* claims based on the alleged use of excessive force under the prior pending action

doctrine. *See* Order re MTD at 9 ("By Mr. Moran's own admission, . . . the claims in this action

could have been raised in *Moran I*."). Given that Mr. Moran also alleged additional facts that

would support new claims arising from his criminal case, however, the Court granted leave for

Mr. Moran to amend his municipal liability claims only insofar as it related to "the Town's

conduct during Mr. Moran's criminal case." *Id.* at 16. The Court noted that "[t]o the extent that

Mr. Moran's municipal liability claim directly relates to the occurrences of his May 14, 2017,

arrest, those claims were litigated in *Moran I* and are dismissed from this case." *Id.*

Although Mr. Moran argues that "the Court's decision in Moran I regarding the Town[']s

*Monell* liability did not take into account the claims that the Town and the policy makers

fabricated evidence related to claims of excessive force," Pl. Opp'n at 9 (emphasis added), this

argument is unavailing. Mr. Moran has already been afforded an opportunity to conduct

discovery[9] and bring municipal claims based on allegations of excessive force. For example, in arguing that the Court "did not take into account the claims that the Town and the policy makers fabricated evidence related to claims of excessive force," Mr. Moran claims "[i]t is this custom and practice that Mr. Moran, and his expert, Reginald Allard, alleges led to a police culture that tacitly consented to the use of excessive force." Pl. Opp'n at 9.

Mr. Allard's report, however, is dated June 29, 2020, well before the Defendants moved for summary judgment in February 2023. *See* ECF No. 323-3. That Mr. Moran could have raised additional arguments to support his excessive force municipal liability claim in *Moran I*, but did not do so, is no reason to allow him further opportunities to amend his claim in this consolidated pleading. *See Goins v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262, 266 (D. Conn. 2005) ("[A] suit is duplicative, and claims would be precluded, where the same or connected transactions are at issue and the same proof is needed to support the claims in both suits or, in other words, whether facts essential to the second suit were present in the first suit." (citation and internal quotation marks omitted)).

Thus, Mr. Moran may not circumvent the previous dismissal of his *Monell* excessive force claim by arguing that the Town Defendants also fabricated evidence as part of an alleged policy and custom of showing deliberate indifference to excessive force claims. As discussed, Mr. Moran has been afforded several years and ample opportunity to bring a *Monell* claim related to excessive force, and was thus confined to asserting claims related to his criminal trial in his Second Amended Consolidated Complaint. To the extent that he argues that the Town

---

[9] Indeed, the abundance of evidence and deposition testimony included in the Plaintiff's briefings and his Proposed Amended Consolidated Complaint suggest that more than ample discovery has already taken place in *Moran I* on the issue of excessive force. *See*, *e.g.* SACC ¶¶ 84–195 (summarizing deposition testimony from several officers); ECF Nos. 323–25 (providing over 2000 pages of deposition transcripts and other evidence, including an expert opinion report on the use of force from November 2022).

Defendants are also liable for violations of the right to a fair trial based on a policy or custom of fabricating evidence that was used to support criminal prosecutions, the Court has provided him an opportunity to attempt to plead such claims here.[10]

Accordingly, to the extent Mr. Moran seeks to bring claims of municipal liability that do not relate to the Town's conduct during his criminal trial, *i.e.*, the alleged fabrication of evidence during his trial, the Court denies leave to amend.

### 2. The Municipal Liability Claims Based on Fabrication of Evidence

"[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

> Courts have recognized that "[a] plaintiff may satisfy the policy or custom prong in one of four ways: by alleging the existence of (1) a formal policy; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers; or (4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact."

*Gomez v. City of Norwalk*, No. 3:15-CV-01434 (MPS), 2017 WL 3033322, at *3 (D. Conn. July 17, 2017) (quoting *Aquino v. City of N.Y.*, No. 1:16-CV-1577, 2017 WL 384354, at *3 (S.D.N.Y. Jan. 25, 2017)); *see also Sherman v. Platosh*, No. 3:15-CV-352 (MPS), 2016 WL 146431, at *3 (D. Conn. Jan. 12, 2016) (citation omitted).

---

[10] Moreover, while Mr. Moran argues that his excessive force and fabrication of evidence claims are "inextricably linked," Mot. to Amend at 1, as a matter of law, the use of excessive force claim is an alleged constitutional violation distinct from the "unconscionable action" of using fabricated evidence to support a criminal prosecution. *See Garnett*, 838 F.3d at 278 (discussing how "claims alleging the denial of a right to a fair trial based on fabricated information are redressable under the Constitution, regardless of which constitutional provision provides the basis for the claim" and noting that "probable cause, which is a Fourth Amendment concept, should not be used to immunize a police officer who violates an arrestee's non-Fourth Amendment constitutional rights.").

As discussed above, Mr. Moran's remaining claims against the Town relate to allegations that the Town is liable under *Monell* for the alleged fabrication of evidence during Mr. Moran's trial.

The Town Defendants argue that Mr. Moran's "attempts to demonstrate either a formal or informal policy, or to demonstrate a policy via the failure to train, supervise, or discipline, are insufficient." Mot. to Dismiss at 12. They argue that Mr. Moran "has not alleged any formal policy or custom officially adopted by the Town that was unconstitutional on its face" and "has not alleged any conduct ordered by a municipal official with policymaking authority." *Id.* at 10, 12. They also argue that he "has done nothing to establish that the conduct of which he complains was part of a widespread, persistent, and notorious practice rising to the level of an informal municipal policy or custom." *Id.* at 10, 12.

The Town Defendants further claim that Mr. Moran cannot succeed on a failure to train theory because he "has not made a single specific allegation regarding the Town's training program as it relates to the handling of evidence or the criminal process, nor identified a specific deficiency in the program that caused his alleged violation of constitutional rights." *Id.* Finally, they claim that Mr. Moran fails to plead a claim on a failure to supervise or discipline theory because he "has made no allegations that the Town was on notice of a potentially serious problem of Town officers manufacturing or fabricating evidence, that the need for corrective action was obvious, or that they failed to investigate or take action in circumstances suggesting deliberate indifference." *Id.*

In response, Mr. Moran argues that "[a]lthough there is no allegation that Chief Heavey or the Commissioners were at the scene of the arrest, or in contact with Officers on the scene while they were at the scene," he adequately pled a *Monell* based on "a patern [sic] and practice

of similar fabrications throughout the history of the GPD which constitute a custom and practice and a de facto policy by the Town." *Id.* at 6 –7.

The Court agrees, at least in part.

Apart from conclusory statements that the individual Defendants' acts "were carried out pursuant to overlapping policies and practices of the municipal defendants," SACC ¶ 242, or that Police Chief Heavy had a "policy of . . . rubber stamping fabricated reports," *id.* ¶ 221, Mr. Moran has not alleged that the Town has a formal policy related to fabricating evidence, nor does he allege that any Town Defendants with policymaking authority personally fabricated evidence, as discussed above. *See Valdiviezo v. Boyer*, 752 F. App'x 29, 31 (2d Cir. 2018) (summary order) ("A 'general and conclusory allegation' of a municipal policy or custom fails to state a facially plausible *Monell* claim." (quotation omitted)).

Mr. Moran has, however, alleged facts sufficient to support a claim for municipal liability based on a theory of deliberate indifference, at least at this stage. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). "There is no bright-line rule for determining whether allegations of prior incidents involving other officers and different alleged victims are sufficient to make out a *Monell* claim." *Colon v. City of Rochester*, 419 F. Supp. 3d 586, 605 (W.D.N.Y. 2019). "The question on a motion to dismiss is whether, assuming the truth of the plaintiffs' factual allegations, those past incidents give rise to a plausible claim of deliberate indifference on the part of the municipality to the types of constitutional violations alleged in the case before the court." *Id.*

As discussed above, Mr. Moran alleged that several officers submitted fabricated reports and gave false testimony to support his criminal prosecution. While the Town Defendants argue

that Mr. Moran "has not alleged or cited to any instance outside of his own case, . . ., in which

municipal policy-making officials manufactured or fabricated evidence, or otherwise allowed the

manufacture and fabrication of evidence to take place," Mot. to Dismiss at 13, the Second

Amended Consolidated Complaint describes two incidents involving other individuals that

allegedly involved fabricated evidence. Mr. Moran alleges that, in 2014, GPD officers, including

Officer Greco, submitted incident reports that "contained fabricated conflicting information" in

an analogous case involving the use of force during an arrest and subsequent charges for

"interfering with an Officer." SACC ¶¶ 69–70. He also alleges that Police Chief Heavey was

present at the scene. *Id.* Mr. Moran also describes another incident in 2008 where a "young man

was charged and . . . successfully prosecuted" after officers submitted "case incident reports did

not correspond to what was captured on the videotape."[11] *Id.* ¶ 72.

Although there is a significant length of time between these alleged incidents and Mr.

Moran's, there are enough similarities between these incidents and the alleged fabrication of

evidence here, including that, in his case, several officers fabricated evidence, to make this a

close question. *Compare Goode v. Newton*, No. 3:12CV754 JBA, 2013 WL 1087549, at *8 (D.

Conn. Mar. 14, 2013) (denying motion to dismiss *Monell* claim where "Plaintiff allege[d] two

separate violations—six months' apart—committed by New London officers," involving

allegations of fabricated evidence), *and Tyus v. Newton*, No. 3:13-CV-1486 SRU, 2015 WL

1471643, at *11 (D. Conn. Mar. 31, 2015) (denying motion to dismiss *Monell* claim "[i]n view

of the number of alleged unconstitutional traffic stops, searches, and arrests involving the

plaintiff and at least one other individual prior to the incidents involving the plaintiff"), *with*

---

[11] In his response to the Town Defendants' motion to dismiss, Mr. Moran argues that he "was able to cite the Crosdale case as one in which fabrication occurred." Pl. Opp'n at 10. Mr. Moran, however, has not referenced *Crosdale v. Town of Greenwich*, No. FSTCV106004811S (Conn. Super. Ct. May 31, 2011)—let alone pled facts alleging that fabrication of evidence occurred in that incident—in his Second Amended Consolidated Complaint.

*Jordan v. Town of Windsor*, No. 3:17-CV-427 (MPS), 2018 WL 1211202, at *3 (D. Conn. Mar. 8, 2018) (granting motion to dismiss *Monell* claim where plaintiff had "not alleged any pattern of actions or even other incidents by untrained employees" other than his own incident); *see also DiPippo v. Cnty. of Putnam*, No. 17-CV-7948 (NSR), 2019 WL 1004152, at *10 (S.D.N.Y. Feb. 28, 2019) (noting "numerous examples from within the Second Circuit in which the district court allowed a *Monell* claim to survive where the Plaintiff alleged only a few examples of similar misconduct.") (collecting cases). As a result, rather than resolve the claim at this stage definitively, the Court will exercise its "inherent authority to manage [its] docket[]... with a view toward the efficient and expedient resolution of cases," *Dietz*, 579 U.S. at 47, and resolve it, to the extent necessary, after the close of discovery, and the filing of a motion for summary judgment.

Accordingly, the Court grants leave to amend for Mr. Moran's municipal liability claims based on deliberate indifference to fabrication of evidence.

### D.  Further Leave to Amend is Denied

While "[t]he court should freely give leave [to amend] when justice so requires," *see* Fed. R. Civ. P. 15(a)(2), district courts have broad discretion to deny leave to amend for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman*, 371 U.S. at 182.

As discussed above, Mr. Moran's fabrication of evidence claims against Police Chief Heavey, First Selectman Camillo, and First Selectman Tesei in their individual capacities fail for lack of personal involvement. *See Tangreti*, 983 F.3d at 618 ("[P]laintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has

violated the Constitution.' . . . The violation must be established against the supervisory official directly.") (citation omitted). Likewise, Mr. Moran may not bring fabrication of evidence claims based on an allegedly incomplete investigation or failing to disclose certain evidence, *see, e.g. Harasz*, 239 F. Supp. 3d at 495 ("Plaintiffs are upset by [Defendant's] perceived lack of zeal in pursuing investigative leads, but their complaint is really that [the Defendant] failed to discover real evidence, not that he fabricated false evidence."), nor may he assert other Section 1983 claims related to his criminal trial, such as a *Brady* or malicious prosecution claim. *See Murphy*, 2010 WL 2640041, at *4 ("[C]ourts have consistently held that participation in Connecticut's accelerated rehabilitation program cannot be regarded as a termination that is favorable to the criminal defendant."). In addition, the Court has denied Mr. Moran leave to amend his *Monell* claim based on the alleged use of excessive force. *See* Order re MTD at 9.

Accordingly, denial of leave to amend any claims in this Ruling and Order is with prejudice because "amendment would be futile," *Tocker*, 470 F.3d at 491, or, because Mr. Moran has already been afforded several opportunities to replead his claims. *See Rodriguez v. Bear Stearns Companies, Inc.*, No. 07-CV-1816 (JCH), 2009 WL 995865, at *10 (D. Conn. Apr. 14, 2009) ("Plaintiffs have already amended their complaint twice. Nevertheless, despite one year of discovery . . ., plaintiffs have failed to plead a claim . . . As a result, in this case, the defendant's interest in the expeditious adjudication of this litigation outweighs the plaintiffs' interest in 'yet another bite at the proverbial apple.' 'Three bites at the apple is enough.'" (quoting *Fisher v. Offerman & Co.,* No. 95 CIV. 2566 (JGK), 1996 WL 563141, at *9 (S.D.N.Y. Oct. 2, 1996))).

## IV.    CONCLUSION

For the foregoing reasons, the motion for leave to amend is **GRANTED in part and DENIED in part**.

32

Leave to amend Count Two is **GRANTED.**

Leave to amend Count One and Count Four is **GRANTED** for claims against Officer Greco, Officer Podmokly, Sergeant O'Donnell, and Officer Tornga in their individual capacities based on their alleged falsification of police reports and providing false testimony, and **DENIED** as futile for claims against First Selectman Camillo, Former First Selectman Tesei, and Police Chief Heavey in their individual capacities.

Leave to amend Count One, Count Three, and Count Four is **DENIED** as futile for claims against any Defendant based on withholding certain evidence, failing to properly investigate, or any other basis apart from the creation or offering of fabricated evidence to be used at Mr. Moran's criminal trial.

Leave to amend Count Three is **GRANTED** as to claims against the Town based on the alleged fabrication of evidence during Mr. Moran's trial and **DENIED** as to all other claims, including claims based on the alleged use of excessive force.

The Town Defendants' motion to dismiss is **DENIED as moot**.

Mr. Moran may proceed on Count Two, excessive force and state law assault against Officer Greco, Counts One/Four, fabrication of evidence against the Individual Defendants in their individual capacities, and Count Three, municipal liability based on allegations of fabrication of evidence in the Second Amended Consolidated Complaint.

    **SO ORDERED** at New Haven, Connecticut, this 21st day of February, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE